Ralph BUELOW, Petitioner,

v.

Walter DICKEY, Respondent,

and

Carol BUELOW, Petitioner,

v.

Walter DICKEY, Respondent.

Nos. 85–C–642, 85–C–643.

United States District Court,
E.D. Wisconsin.

Nov. 20, 1985.

John Schiro, Milwaukee, Wis., for petitioner.

Mary Batt, State of Wis. Dept. of Justice, Madison, Wis., for respondent.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

On January 10, 1984, Carol and Ralph Buelow were convicted in the state circuit court for Fond du Lac County of being parties to the crime of arson. On December 26, 1984, the Wisconsin Court of Appeals affirmed their convictions. *State of Wisconsin v. Carol and Ralph Buelow,* 122 Wis.2d 465, 363 N.W.2d 255 (Ct.App. 1984). On January 30, 1985, the Wisconsin Supreme Court dismissed the Buelows' petition for review of their convictions as untimely filed. On March 6, 1985, the Wisconsin Supreme Court denied their motion for reconsideration.

The Buelows now seek federal habeas corpus relief pursuant to 28 U.S.C. § 2254. They allege that their convictions were obtained in violation of their sixth amendment rights to confront the witnesses against them and to have the assistance of counsel. For the reasons which follow, the writ will be denied.

## I. BACKGROUND

On October 11, 1983, three months before they went on trial, the Buelows appeared before a state judge for judicial review of the public defender's refusal to represent them. The judge reviewed and rejected the Buelows' claim that they had placed title to their 600-acre farm in a valid trust, to whose assets they did not have access. He found that the trust was invalid, that the Buelows were not indigent, and that each owned sufficient assets to retain private counsel. The Buelows represented themselves at trial.

In the course of the investigation into the arson, Ms. Honey Lou Suttner gave two separate statements inculpating both herself and the Buelows. She gave the first of these statements to police and the second before a state circuit judge presiding over a "John Doe" hearing about two months later. At trial, the state produced and attempted to question Ms. Suttner. Ms. Suttner took the stand and was placed under oath, but refused to answer any questions on fifth amendment grounds.

After the prosecutor granted her testimonial immunity under sec. 972.08(1) Wis. Stats., the judge ordered her to testify, but she nonetheless persisted in her silence. The judge found her in willful contempt of court and remanded her to the county jail.

After holding her in contempt, the judge found Ms. Suttner unavailable and granted the prosecutor leave to have both of her statements read to the jury. The same individual who took her first statement, Detective Dobyns of the Fond du Lac Sheriff's Department, then read both statements to the jury in question and answer form. After he finished, Carol Buelow extensively cross-examined him. Although offered the opportunity to question Mr. Dobyns, Ralph Buelow declined to do so.

The two statements clearly implicated Ms. Suttner and the Buelows in the destruction of a Wisconsin Department of Natural Resources (DNR) building. Though several other witnesses testified at trial, these out-of-court statements constituted the only evidence adduced by the state directly linking the Buelows to the arson charged. Ms. Suttner's refusal to testify prevented the Buelows from cross-examining her in the presence of the jury. The state courts treated Ms. Suttner as "unavailable" and found her statements to be reliable and trustworthy so as to satisfy the confrontation clause of the sixth amendment.

The Buelows filed their petition for review with the Wisconsin Supreme Court on January 28, 1985, more than 30 days after the Wisconsin Court of Appeals had affirmed their convictions. Section 809.62(1) Wis.Stat., provides that parties must petition the Wisconsin Supreme Court for review within 30 days of the adverse decision of the Court of Appeals. The Wisconsin Supreme Court dismissed their petition as untimely.

## II. WAIVER

 Under the law of waiver, when a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas corpus relief absent a showing of cause and actual prejudice. *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). I am persuaded that the Buelows' proce-

dural default was the result of inadvertence and that their inability to cross-examine Ms. Suttner, if unlawful, was prejudicial to them. *Nutall v. Greer,* 764 F.2d 462, 465 (7th Cir.1985).

The fundamental importance of proper confrontation at trial, the significance of the challenged evidence, and the absence of other evidence corroborative of guilt, demonstrate that there was a real possibility of actual prejudice to the Buelows. The character and magnitude of the constitutional infirmities alleged in their habeas petitions thus warrant looking beyond the state procedural forfeiture involved in this case in order to examine the petitioners' contentions. *See Riner v. Owens,* 764 F.2d 1253, 1256 (7th Cir.1985).

## III. THE CONFRONTATION CLAUSE

Having shown sufficient cause and actual prejudice for their procedural default, the Buelows are entitled to present their constitutional claims to the federal courts for review on the merits. They argue, first, that Ms. Suttner was not unavailable as a witness in the constitutional sense, since she was not given an opportunity to consult counsel after being granted testimonial immunity and ordered to testify; and, second, that even if she was unavailable, neither of her out-of-court statements bore sufficient indicia of reliability to satisfy the confrontation clause.

### A. *Unavailability*

The state produced Ms. Suttner at trial, where she was placed under oath, and sought to question her regarding her relationship with the Buelows. She refused to testify on fifth amendment grounds, in spite of a grant of testimonial immunity. The trial judge then ordered her to testify or be held in contempt, in accordance with state law. She persisted in her silence, defying the judge's order that she testify, was held in contempt, and declared unavailable.

 A witness is not unavailable for purposes of the exception to the confrontation

requirement unless prosecutorial authorities have made a good-faith effort to obtain his presence at trial. *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). But the law does not require the doing of a futile act. The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present the witness. *Id.*

█ Prosecutorial authorities in this case made every effort to obtain Ms. Suttner's live testimony and thus laid a proper predicate for admission of her two out-of-court statements. *Roberts, supra,* 448 U.S. at 74, 100 S.Ct. at 2543. Her refusal to testify was no fault of their own, and nothing that they could reasonably be expected to remedy. Indeed, their production of Ms. Suttner and grant of testimonial immunity were the only means reasonably within their power to make her available for direct and cross-examination. For purposes of confrontation clause analysis, her unavailability to testify was established when she persisted in asserting her fifth amendment privilege, despite a prosecutorial grant of immunity, in defiance of an order by the trial court to testify or be held in contempt. *United States v. Caputo*, 758 F.2d 944, 952 (3rd Cir.1985); *United States v. Inadi*, 748 F.2d 812, 819–20 (1984), cert. granted, — U.S. —, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985); *see also United States v. Robinson*, 635 F.2d 363, 364 (5th Cir.1981).

### B. *Reliability*

The out-of-court statements read to the jury purported to identify the Buelows, one other male, and Ms. Suttner as the perpetrators of the arson which destroyed a building belonging to the Wisconsin DNR. Both statements described how the Buelows and the other male picked Ms. Suttner up in a pick-up truck one evening in late December 1981 and drove to the site of some buildings and sheds belonging to the DNR. Carol Buelow was driving. She dropped the other three individuals off near the buildings. After the fire had been started, she returned to pick them up. Ms.

Suttner's statements also indicated that Ralph Buelow and the other male present belonged to a group called the Posse Comitatus, which did not like the DNR.

The statements further disclosed that Ralph Buelow and the other male broke into two of the DNR buildings, poured gasoline on the floors and furniture inside them, and hurriedly ran out of one just as it burst into flames. They indicated that the buildings out of which the men had run contained jeeps and cars. Ms. Suttner also disclosed that she was the designated lookout and, at the behest of the two men, remained outside while they prepared and ignited the fire.

Ms. Suttner gave the first of the two statements to police in a conference room of the Fond du Lac County Sheriff's Department. Present were Detective Dobyns of the Fond du Lac County Sheriff's Department and a Wisconsin Department of Criminal Investigations Fire Marshall. Prior to answering any questions, Ms. Suttner read and stated that she understood her Miranda rights. Nonetheless, she was not in police custody and had not been arrested for or charged with committing any crime at the time she gave her statement. In short, Ms. Suttner had volunteered to come forward and speak to the authorities. She had gone to the sheriff's department of her own free will and had not been threatened, promised anything, or pressured to assist in the investigation. She simply gave her statement and returned home the same evening approximately one-half hour later.

Ms. Suttner returned to the sheriff's department about a week later. She was not in custody or under any restraint at that time either. Again, no threats, promises, or deals of any kind were intimated or made. Having taped the original interview, Detective Dobyns gave Ms. Suttner a written transcript prepared from the tape and asked her to review it. Ms. Suttner read it, made some corrections, and signed each page of the statement. She then left the department as freely as she came to return home.

Ms. Suttner's second statement took the form of testimony given before a state circuit judge presiding over a "John Doe" investigative hearing. Although no defense counsel was present to cross-examine her, Ms. Suttner was under oath, and the minutes of her testimony were recorded by an official court reporter.

■ To be admissible under the confrontation clause, Ms. Suttner's statements must bear adequate indicia of reliability. *Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539. However, where the state seeks to introduce hearsay statements, such as these, which are against the declarant's penal interest, and which also inculpate the accused, those portions of the statements which inculpate the accused must be scrutinized carefully. *United States v. Katsougrakis,* 715 F.2d 769, 774 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). Thus, in order to introduce them in a manner that does not offend the confrontation clause, the state must show that the "dual inculpatory" statements fall within a recognized exception to the hearsay rule and that attending circumstances confirm their trustworthiness. *Katsougrakis, supra,* 715 F.2d at 775.

■ Under Roberts, where the declarant's statements do not fall within a well recognized or firmly rooted hearsay exception, "the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539. However, I am persuaded that the statements read to the jury in this case did carry such particularized guarantees. Ms. Suttner made essentially the same statement not only once, but twice, the later time before a judge while under oath and a court reporter who transcribed her testimony. In *United States v. Edward Howard and Thomas Cusack,* 774 F.2d 838, 846 (7th Cir.1985), the court held that hearsay statements made in this context bear sufficient particularized guarantees of trustworthiness under *Roberts* and thus meet the requirements for admission under the confrontation clause.

It should also be noted that, whether or not the penal-interest exception to the hearsay rule applies in this situation, "each statement here was in a very real sense self-incriminatory and unquestionably against interest." *Chambers v. Mississippi,* 410 U.S. 284, 300–01, 93 S.Ct. 1038, 1048–49, 35 L.Ed.2d 297 (1973). People do not lightly admit a crime and place critical evidence in the hands of police in the form of their admissions, *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971). In addition, the apparent voluntariness of Ms. Suttner's statements, their unerring consistency and clear description of the roles the Buelows played in the crime, suggest that "the possibility that cross-examination ... could conceivably have shown the jury that the statement[s], though made, might have been unreliable was wholly unreal." *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970).

■ Hearsay is constitutionally admissible under the confrontation clause (1) if the witness who offers the hearsay testimony of another person is subject to cross-examination and (2) if the circumstances under which the hearsay statement was made indicate that its content is probably true. *United States v. Boulahanis,* 677 F.2d 586, 589 (7th Cir.1982). Although Ralph Buelow passed up the opportunity to cross-examine, Carol Buelow extensively questioned Detective Dobyns, the individual who took Ms. Suttner's first statement and later read both statements to the jury. Further, the challenged statements bear particularized guarantees of trustworthiness, *Howard, supra,* 774 F.2d at 846, and are reliable, *Dutton, supra,* 400 U.S. at 89. I believe that the circumstances under which the statements were made indicate that their contents are probably true. *Boulahanis, supra,* 677 F.2d at 589.

The admission of Ms. Suttner's hearsay statements thus did no violence to the Buelows' sixth amendment rights to confrontation. *Robinson, supra,* 635 F.2d at 365. The statements themselves and contexts in which they were made demonstrate inher-

ent reliability, *United States v. Layton,* 720 F.2d 548, 561 (9th Cir.1983), *cert. denied,* 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984), and abundant guarantees of trustworthiness. *Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539. *Dutton, supra,* 400 U.S. at 88–89. As such, their presentation to the jury was proper.

## IV. COUNSEL

The Buelows claim that they were denied their sixth amendment right to counsel on three grounds: a) the trial court erroneously assigned them the burden of proving indigency in evaluating their application for representation by the public defender's office; b) the evidence presented by those opposing their application was insufficient to support a finding of non-indigency; and c) the trial court failed to secure a valid waiver of their right to counsel.

### A. *Burden of Proof*

 The general rule is that where a defendant's ability to afford counsel has been placed into issue, he has the burden of proving by a preponderance of the evidence that he is financially unable to afford counsel. *United States v. Harris,* 707 F.2d 653, 661 (2d Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); *see also United States v. Celani,* 748 F.2d 363, 365 (7th Cir.1984). The Buelows contention that they should not have been required to prove their own indigency is rejected.

### B. *Sufficiency of the Evidence*

 On habeas review, the factual findings arising out of state court proceedings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983). Such findings must be determined in the first instance by the state courts and deferred to, in the absence of convincing evidence to the contrary. *Rushen, supra,* 464 U.S. at 120, 104 S.Ct. at 456, citing *Marshall v. Lonberger,* 459 U.S. 422, 431–32, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983).

 Here, both the state trial and the appellate courts concluded that the Buelows were able to afford private counsel. They found that the evidence clearly showed the Buelows ownership of an unencumbered 600-acre farm, replete with the equipment and machinery to run it. No evidence sufficient to rebut the presumption of correctness accorded state court findings of fact has been shown. The Buelows simply failed to satisfy their burden of proving that they were foreclosed from liquidating trust assets.

### C. *Waiver of Counsel*

 The Buelows' contention that the trial judge was required to engage them in a colloquy ensuring a knowing and intelligent waiver of their right to counsel cannot be sustained. Immediately after finding them financially able to retain private counsel, the trial judge informed the Buelows that their joint trial would commence on the morning of January 9, 1984, approximately three months hence, whether they appeared with an attorney or not. He told them that they had already received one postponement and that the date was firm. At a subsequent pretrial hearing, moreover, the judge told the Buelows that he could not and would not act as their counsel at trial, and advised them that it would be in both of their interests to obtain private counsel to represent them rather than proceeding pro se.

Therefore, IT IS ORDERED that the Buelows' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be and hereby is denied.