Ralph **BUELOW**, Petitioner–Appellant,

v.

Walter **DICKEY**, Respondent–Appellee.

Carol **BUELOW**, Petitioner–Appellant,

v.

Walter **DICKEY**, Respondent–Appellee.

Nos. 86–1566, 86–1567.

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1987.

Decided May 31, 1988.

C. Steven Tomashefsky, Jenner & Block, Chicago, Ill., for petitioners-appellants.

Marguerite M. Moeller, Dept. of Justice, Madison, Wis., for respondent-appellee.

Before EASTERBROOK and RIPPLE, Circuit Judges, and GRANT, Senior District Judge.[*]

GRANT, Senior District Judge.

Following a jury trial in the Circuit Court of Fond du Lac County, Wisconsin, petitioners Ralph and Carol Buelow were convicted of arson and sentenced to ten years in prison. They appealed their convictions on two sixth amendment grounds: denial of their right to confront witnesses against them, and deprivation of the right to counsel due to an improper finding of nonindigency. The Wisconsin Court of Appeals affirmed the convictions. The Wisconsin Supreme Court dismissed the Buelows' petition for review as untimely filed, and later denied their motion for reconsideration. Having exhausted their state remedies, Ralph and Carol Buelow filed petitions for writs of habeas corpus in federal court pursuant to 28 U.S.C. § 2254. The district court found that the petitioners had not forfeited their right to federal habeas review, but rejected both the right-to-counsel and confrontation claims. The Buelows now seek review of the district court's denial of the habeas petitions. For the reasons set forth below, we reverse and remand.

## Facts

### A. Background

On December 20, 1981, in Calumet Harbor, Wisconsin, a building belonging to the Wisconsin Department of Natural Resources [DNR] burned down. Although the fire marshal suspected that arson was involved, his investigation produced no suspects. More than thirteen months later, while Police Officer Meves was interviewing Honey Lou Suttner in an unrelated investigation, Suttner offered the information that she had been involved in the DNR fire.

Suttner gave two statements inculpating herself and the Buelows. On February 17, 1983, in an interview given by Detective Dobyns, Suttner claimed that Harlee Suttner, her former husband, arrived one night in December 1981 with Ralph and Carol Buelow. She stated that she believed they were going to blow up an abortion clinic that evening; however, they drove in the Buelows' truck to Calumet Harbor instead. Suttner told Detective Dobyns that she stood guard outside the DNR building, that Ralph Buelow and Harlee Suttner poured gas on the floor and started the fire, and that Carol Buelow parked nearby. As the building went up in flames, she said, they drove back to Harlee Suttner's home. Suttner claimed that Ralph Buelow and Harlee Suttner burned the building because "they don't care for the DNR." On February 25, 1983, Suttner returned to the police station, read the typed copy of the unsworn statement she had made a week earlier, and signed it.

Suttner's second statement was taken under oath before a state circuit judge during a John Doe hearing[1] on May 11,

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Pursuant to Wisconsin statutory guidelines, a John Doe hearing is conducted by a judge who examines the complainant and witnesses under oath to determine whether "it appears probable from testimony given that a crime has been

1983. She again implicated herself, Harlee Suttner, and the Buelows in the arson, and added that Harlee Suttner and the Buelows were members of the Posse Comitatus, a group that allegedly did not like the Department of Natural Resources.

Basing probable cause on Suttner's statement to him, Detective Dobyns filed criminal complaints against Ralph and Carol Buelow on May 27, 1983, charging them with being parties to the crime of arson, a Class B felony.

### B. *Pretrial Proceedings*

At a preliminary motion hearing on September 9, 1983, the two attorneys representing Carol and Ralph Buelow moved to withdraw on the ground that the Buelows could not afford to pay for representation. The court granted their motions. However, the Buelows' application for appointment of public counsel was opposed by the public defender's office. An indigency hearing was held on September 30, 1983. The public defender asserted that the Buelows were not qualified as indigents because the Buelow farm property and assets being held in trust were determined by his office to be personal property within the reach of the Buelows. Ralph and Carol Buelow claimed, however, that they had neither income nor access to the trust assets. Acknowledging the complexity of the Buelows' financial affairs, the court ordered the Buelows to bring documentation of their claims to a judicial review hearing scheduled for October 11.

At the second hearing on the issue of indigency, the court received and reviewed two quitclaim deeds and the trust indenture naming Carol Buelow and her daughter as trustees. Carol Buelow told the court that the trust required a unanimous vote of the trustees before action could be taken, and that the trustees voted not to turn over to the court the trust tax returns. Following examination of the documents and interrogation of the Buelows, the court determined that the trust did not divest Ralph and Carol Buelow of the trust property and called the trust a "sham." It found that the Buelows were actual and constructive owners of the trust property, and that they had sufficient assets in the trust to disqualify them for an attorney at public expense. After discussing their right to represent themselves at trial, the court upheld the determination of the public defender's office and set the cause for trial.

### C. *Trial*

When the jury trial commenced on January 9, 1984, Ralph and Carol Buelow represented themselves. Of the eight witnesses called by the State, six testified concerning the fire itself, and one described the Suttner interviews. Only Honey Lou Suttner had implicated the Buelows in the crime charged. Suttner took the stand and was placed under oath. However, she refused to testify on fifth amendment grounds, despite the State's offer of immunity and the court's threat of contempt.[2] Thereupon,

---

committed and who committed it." Wis.Stat. § 968.26. If the judge in his discretion so determines, the complaint is filed and a warrant issued for the arrest of the accused. *Id.*

2. When Honey Lou Suttner refused to answer the prosecutor's questions, the state granted her immunity pursuant to Wis.Stat. § 972.08(1). The court then ordered Suttner to testify. She responded:

> I am not willing to accept that. They already pressed charges against me. I sat in jail already because of it. I don't feel that at this point that (sic) I have to testify. If you want to hold me in contempt of the court, fine, but I am not going to do it. They pulled me out of my place of employment and has (sic) caused my family a lot of embarrassment.

After overruling the Buelows' objection, the court repeated the order to testify, and Suttner

again refused. The court's third mandate followed:

> THE COURT: We will take this a step at a time. Let's go back to the current witness. Mrs. Suttner, are you saying that in spite of the fact that you have invoked the Fffth Amendment for the privilege against self-incrimination, and the State then granted you immunity, and I find that you are eligible to invoke that privilege, and the State overrides that by invoking the the (sic) immunity, I am ordering you to testify, and you are saying notwithstanding that, you will not give any further testimony?
>
> THE WITNESS: Charges are still against me. I will not give any testimony.

Thereupon the court found Suttner in willful contempt pursuant to Wis.Stat. § 972.08(2) and ordered her incarceration "until such time as

the court held Suttner in contempt and admitted Suttner's two out-of-court statements, over the Buelows' objections, as the admissible hearsay of an unavailable witness. Detective Dobyns read Suttner's statements and Officer Meves testified concerning his questioning of Suttner in January and February of 1983.

The Buelows did not present a defense; they neither testified nor called witnesses in their behalf. On January 10, 1984, the jury convicted them both. On February 17, 1984, they were sentenced to ten years in prison.

### D. *Appeals*

The Wisconsin Court of Appeals affirmed the Buelows' convictions on December 26, 1984. *State v. Buelow,* 122 Wis.2d 465, 363 N.W.2d 255 (Wis.Ct.App.1984). It found that, since the Buelows did not prove indigency by a preponderance of the evidence, the trial court's determination of nonindigency was not clearly erroneous. It also upheld the trial court's admission of Suttner's out-of-court statements as hearsay evidence that was admissible as "statements against interest" of a declarant who was "unavailable" under the statutory definitions of Wisconsin Statutes §§ 908.-04(1)(b) and 908.045(4). Because both statements were found to be trustworthy and reliable, the court concluded that their admission did not violate the Buelows' constitutional right to confront the witnesses against them. Therefore the appellate court affirmed the jury's determination of guilt.

The Buelows' petition for review to the Wisconsin Supreme Court was filed later than the thirty-day bar date established by Wis.Stat. § 808.10 and § 809.62(1). For that procedural reason, their petition was dismissed on January 30, 1985 as untimely, and their motion for reconsideration was denied.

On April 25, 1985, the Buelows filed petitions for federal habeas corpus relief. The district court found that, because the un-

timely filing in the state supreme court was inadvertent, the petitioners had not forfeited their right to federal habeas review.

I am persuaded that the Buelows' procedural default was the result of inadvertence and that their inability to cross-examine Ms. Suttner, if unlawful, was prejudicial to them. *Nutall v. Greer,* 764 F.2d 462, 465 (7th Cir.1985).

The fundamental importance of proper confrontation at trial, the significance of the challenged evidence, and *the absence of other evidence corroborative of guilt,* demonstrate that there was a real possibility of actual prejudice to the Buelows. The character and magnitude of the constitutional infirmities alleged in their habeas petitions thus warrant looking beyond the state procedural forfeiture involved in this case in order to examine the petitioners' contentions. *See Riner v. Owens,* 764 F.2d 1253, 1256 (7th Cir. 1985).

*Buelow v. Dickey,* 622 F.Supp. 761, 763 (E.D.Wis.1985).

Having found that the Buelows showed sufficient cause and actual prejudice for their procedural default, the court reviewed the merits of their constitutional claims. Following the *Ohio v. Roberts* test for admissibility of the statements of an unavailable witness, *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the district court determined that Suttner was truly unavailable, and that her statements bore adequate indicia of reliability and trustworthiness. It concluded that the admission of Suttner's hearsay statements did not violate the Buelows' sixth amendment rights to confrontation.

The court then turned to petitioners' claim that they were denied their sixth amendment right to counsel. It agreed with the determination of the Wisconsin courts that the Buelows did not meet their burden of proving indigency. It further found that petitioners did not offer sufficient evidence to the district court to rebut

---

you are willing to testify or until the conclusion of this trial." However, incarceration was waived and Suttner remained in the courtroom

for the rest of the trial upon the motion of the district attorney.

the presumption of correctness accorded state court findings of fact. *Id.* at 766. After determining that the Buelows had in fact knowingly waived their right to counsel by proceeding *pro se*, the court denied the Buelows' petitions for writ of habeas corpus. *Id.*

Petitioners now appeal that denial of the writ to this court, presenting both the confrontation and right-to-counsel claims. The State raises its procedural claim that the Buelows' untimely petition for review to the Wisconsin Supreme Court constitutes a waiver of their right to seek a writ of habeas corpus. If the State's procedural allegation is correct, federal habeas relief is barred by the Buelows' procedural default. We therefore turn first to the status of the Buelows' untimely filing and the issue of waiver. Because we find that the default cannot be set aside, we do not reach the sixth amendment claim.

### Procedural Default and Waiver

The State asserts that petitioners waived their right to obtain federal habeas corpus review of their convictions by failing to timely petition the state supreme court for review. Petitioners insist that, once we consider the causes of the delay in filing, we will affirm the district court's finding that an inadvertent attorney error causing a procedural default does not require forfeiture of a petitioner's right to seek habeas relief.

The facts concerning the late filing are not in dispute. The record indicates that Buelows' appellate counsel was late in delivering the petition to the courier on the last day for filing the petition; that the courier failed to mark the papers for "same-day" service; and that the weather and road conditions caused further delay in transporting the document. As a result, the petition was filed on the Monday following the Friday deadline.

At oral argument petitioners conceded that the principal responsibility for the untimely filing rested with the Buelows' appellate counsel. Nevertheless they assert that the Buelows must not be held responsible for their attorney's negligence or ineffective assistance of counsel, and that the underlying merits of their case are so strong that this court must reach those constitutional issues, as the district court below so held.

### A. *The State Procedural Default*

The Wisconsin Statutes establish clear procedural mandates for review of an appellate decision by the supreme court. Section 808.10 provides that a decision of the court of appeals is reviewable by the supreme court *only* upon a petition for review granted by the supreme court, which petition *shall* be filed within 30 days of the date of the appellate decision. Section 809.62 underscores the filing period and the discretionary nature of this highest stage of state review:

> (1) A party may file with the supreme court a petition for review of an adverse decision of the court of appeals pursuant to s. 808.10 within 30 days of the date of the decision of the court of appeals. * * * *Supreme court review is a matter of judicial discretion, not of right, and will be granted only when special important reasons are presented.*

Wis.Stat. § 809.62. Pursuant to these provisions, the Wisconsin Supreme Court dismissed the Buelows' petition. The court also cited *First Wisconsin National Bank of Madison v. Nicholaou*, 87 Wis.2d 360, 274 N.W.2d 704 (1979), which concluded that failure to timely file deprives the court of jurisdiction, *id.* at 705, and held that, "[h]ereafter, petitions to appeal which are received beyond the 30–day time limit ... will not be accepted." *Id.* at 707.

This circuit recently considered the jurisdictional nature of a filing bar date in *United States v. Hill*, 826 F.2d 507 (7th Cir. 1987).[3] It found that, once a petitioner misses a jurisdictional filing deadline, the

---

**3.** *United States v. Hill* reviewed a petitioner's failure to timely file a motion to reduce his sentence under Fed.R.Crim.P. 35(b). Under Criminal Rule 45(b), the time period established under Rule 35(b) may not be extended by the court. Both these federal procedural rules and the Wisconsin rules before us are limitations on a court's jurisdiction.

court is deprived of the power to act. *Id.* at 508. Even if the untimeliness of the filing was the fault of a negligent attorney, and in no way was caused by the petitioner himself, the rule is inflexible: "[N]eglect or misconduct by an attorney cannot give the court a power it lacks." *Id.*

■ Both the Wisconsin statutes and the state supreme court's construction of them are binding on us.

> State courts are the ultimate expositors of their own states' laws and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's ... statutes by the court of that state except in extreme circumstances, none of which are present here.

*Cole v. Young*, 817 F.2d 412, 416 (7th Cir. 1987), quoting *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir.1981). *See Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975). When considering a habeas petition, therefore, a federal court must respect a state court's finding of waiver or procedural default under its own laws.

> The State's interest in the integrity of its rules and proceedings and the finality of its judgments ... would be undermined if the federal courts were too free to ignore procedural forfeitures in state court.

*Reed v. Ross*, 468 U.S. 1, 10, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1984).

**B.** *The "Cause and Prejudice" Standard*

As a matter of state law, the Buelows' failure to perfect an appeal within the statutory time limit is a procedural default. Nevertheless, federal habeas corpus review of the constitutional challenges raised by the Buelows will not be barred if petitioners can demonstrate both cause for their noncompliance with the state procedural rule and actual prejudice resulting from the default. *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d

783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Williams v. Lane*, 826 F.2d 654, 658–59 (7th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 353, 98 L.Ed.2d 378 (1987). The "cause and prejudice" test presented in *Wainwright v. Sykes* is conjunctive: A petitioner's inability to demonstrate either prong results in dismissal of his habeas petition before the merits of his claims can be reached. *See Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986); *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986).

The Buelows assert three factors that led to the procedural default. The primary cause of the delay was their counsel's ineffective performance of his obligation to them to prepare and to file their appeal to the state supreme court. In addition to that error, the courier service failed to deliver the petition for filing on the same day as promised. The third factor was the bad weather and road conditions on that Friday, the last day for filing the appeal. Petitioners urge this court to affirm the decision of the district court by finding that state appellate counsel's "inadvertent" actions should not bar federal habeas relief.

When the Supreme Court established its "cause and prejudice" standard in *Sykes*, it explicitly avoided defining those terms. In his dissent, Justice Brennan criticized the *Sykes* majority for failing to give content to the two-pronged standard and for leaving unanswered the central question, "How should the federal habeas court treat a procedural default in a state court that is attributable purely and simply to the error or negligence of a defendant's trial counsel?" 433 U.S. at 100, 97 S.Ct. at 2513 (Brennan, J., dissenting). Since *Sykes,* courts have been attempting to clarify the standard by determining which circumstances satisfy the *Sykes* requirements.[4] At the time the district court below had determined that inadvertence of counsel was sufficient cause, this circuit had held the position that "cause should be given 'a

---

**4.** This circuit has recently applied the *Sykes* cause-and-prejudice test to a waiver caused by counsel's intentional determination not to take

an appeal. *Johnson v. United States,* 838 F.2d 201 (7th Cir.1988).

flexible definition,'" *United States ex rel. Tonaldi v. Elrod,* 782 F.2d 665, 668 (7th Cir.1986) (quoting *Clay v. Director, Juvenile Division, Department of Corrections,* 749 F.2d 427, 434 (7th Cir.1984), *cert. denied,* 471 U.S. 1108, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985)), and that such negligent conduct as attorney ignorance or inadvertence, error falling short of constitutional ineffective assistance of counsel, was sufficient to satisfy the cause requirement. *Gray v. Greer,* 778 F.2d 350, 354 (7th Cir. 1985), *vacated,* — U.S. —, 106 S.Ct. 3328, 92 L.Ed.2d 734 (1986).

However, since then the Supreme Court has explicitly rejected the position that an attorney's ignorance or inadvertence can be sufficient cause for a procedural default. In *Murray v. Carrier,* just as herein, "[t]he real thrust of respondent's arguments appears to be that on appeal it is inappropriate to hold defendants to the errors of their attorneys." 106 S.Ct. at 2648. The Court answered that defendants are bound by their counsel's conduct, and that only conduct so incompetent as to be adjudged constitutionally ineffective will be held to be sufficient cause under the *Sykes* standard.[5]

> We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674] we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.

*Id.* at 2645–46. *See also Taylor v. Illinois,* — U.S. —, — 108 S.Ct. 646, 657, 98 L.Ed.2d 798 (1988). The Court also made clear that an appellate default must be evaluated under the same standards that apply to a trial default:

> Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial.

*Id.* at 2648. *See also Smith v. Murray,* 106 S.Ct. at 2665.

Since the Buelows did not allege below that their attorney's assistance was constitutionally ineffective, such a contention is now waived.[6] *See United States ex rel. Weismiller v. Lane,* 815 F.2d 1106, 1109 (7th Cir.1987). However, in any case the argument would have failed, for there is no right to competent counsel in a discretionary appeal such as the Buelows' appeal to the state supreme court. The constitutional right to counsel is guaranteed to a defendant both for trial and for the first appeal as of right. *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). That appellate-level right to counsel also comprehends the right to effective assistance of counsel. *Evitts v. Lucey,* 469 U.S. 387, 393–400, 105 S.Ct. 830, 834–38, 83 L.Ed.2d 821 (1985). However, there is no constitutional right to counsel to pursue discretionary state appeals. *Ross v. Moffitt,* 417 U.S. at 610, 94 S.Ct. at 2443, 2444. The Supreme Court has stated summarily: "Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application [for review to the state supreme court] timely." *Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301, 71 L.Ed. 2d 475 (1982). Thus the Buelows cannot claim a constitutional deprivation of effective representation.

Nevertheless, ineffective assistance of counsel is not the only sufficient cause. A habeas petitioner can also establish cause by showing "some external impediment

---

**5.** The two dissenting Justices in *Carrier,* Brennan and Marshall, were of the opinion that the cause requirement should be satisfied "where a procedural default resulted from counsel's inadvertence." 106 S.Ct. at 2682.

**6.** The Buelows brought the claim of ineffective assistance of appellate counsel to the district court without first presenting it in the state courts. After being advised that the raising of an unexhausted issue would require dismissal, petitioners were allowed to amend their habeas petition to delete the waived claim.

preventing counsel from constructing or raising the claim." *Id.* at 2648.

[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

*Id.* at 2646. Although the Court would not define the term "external impediment," it did offer two cases as examples.

[W]e note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, see *Reed v. Ross,* 468 U.S. at 16, 104 S.Ct., at 2910, or that "some interference by officials," *Brown v. Allen,* 344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469 (1953), made compliance impracticable, would constitute cause under this standard.

*Id.*

The circumstances herein do not fall into these or any comparable categories. Petitioners do not claim that interference by officials or newly available information or a novel legal issue caused the untimely filing. Although they assert that the courier's error and the icy road conditions were additional factors in the delayed filing, the Buelows concede that the initial and major mistake was the attorney's inability to complete the petition for a timely delivery by the courier to the state supreme court.[7] Under these circumstances, we decline to find that cause can be established by any external impediment that prevented proper filing.

█ The court concludes that the Buelows are unable to demonstrate the first prong in the *Wainwright v. Sykes* standard, the cause that will excuse their procedural default. We thus need not determine whether the petitioners have carried their burden of showing prejudice. *Smith v. Murray,* 106 S.Ct. at 2666; *Engle v. Isaac,* 456 U.S. at 135, 102 S.Ct. at 1576. We find that, because the petitioners herein have failed to meet the required *Sykes* criteria, their claims are barred from federal review.

█ There is yet one last avenue open to habeas petitioners who waived their claims through procedural defaults in state courts and cannot satisfy the cause-and-prejudice requirement. *Murray v. Carrier* created a limited exception to the forfeiture rule of *Sykes* in circumstances of manifest injustice or fundamentally unjust incarceration:

We remain confident that, for the most part, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." [*Engle,* 456 U.S. at 135, 102 S.Ct. at 1576.] But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

*Carrier,* 106 S.Ct. at 2650. *See also Engle,* 456 U.S. at 135, 102 S.Ct. at 1576. Thus, a federal court, notwithstanding the state procedural bar, may set aside the cause-and-prejudice test and permit a habeas petition if, due to a fundamentally unjust trial, an innocent defendant was convicted.[8]

---

**7.** One exhibit before the district court was a letter from the courier service to the Buelows' appellate attorney stating that, because the papers were not ready to be picked up on time, it was doubtful that the late shipment (being taken by truck to another city in poor driving conditions) could have been delivered on the same day.

**8.** The petitioners herein have not relied upon *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), which held that "federal courts may grant habeas relief in appropriate cases, regardless of the nature of the underlying attorney error." *Id.* at 2587. *Kim-*

*melman* seems at odds with *Carrier,* which allows federal courts to grant habeas relief only if the underlying attorney error has reached the level of sixth amendment ineffectiveness of counsel. They are perhaps reconciled when the "appropriate cases" for granting habeas relief under *Kimmelman* are the cases in which a "manifest injustice," such as "the conviction of one who is actually innocent," is shown under *Carrier.* In any case, the facts of *Kimmelman* are easily distinguishable from the facts presently before us: In *Kimmelman,* the attorney's conduct during trial was alleged to be constitutionally ineffective; herein, the attorney's conduct in a discretionary appeal was alleged to be neg-

To determine whether the Buelows were victims of a miscarriage of justice, this court reviewed the trial and assessed its fundamental fairness. We found no manifest injustice in the pretrial determination of nonindigency or in the proceedings at trial. The record clearly supports the determinations of the Wisconsin appellate court and the federal district court, both of which upheld the trial court's rulings.[9] "[W]e do not believe that refusal to consider the defaulted claim on federal habeas carries with it the risk of a manifest miscarriage of justice." *Smith v. Murray,* 106 S.Ct. at 2668. Consequently we find no fundamental unfairness that would justify excusing the procedural default in the absence of a showing of cause and granting the writ sought by the Buelows. *See Cartee v. Nix,* 803 F.2d 296, 302 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987).

### C. *The "Deliberate By-pass" Standard*

■ The Buelows' final argument is that we should follow the *Fay v. Noia* standard rather than the "cause and prejudice" test of *Sykes. Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Although petitioners acknowledge that the Seventh Circuit rejected application of the *Fay v. Noia* "deliberate by-pass" test in *Nutall v. Greer,* 764 F.2d 462, 464 n. 3 (7th Cir.1985), a failure-to-appeal case, they still urge this panel to follow the *Fay v. Noia* rationale, since the record forcefully shows that the Buelows had not deliberately by-passed the orderly procedure of the state courts. They assert that their failure to meet the filing deadline by one working day was

unintentional, certainly not a tactical decision, and ought not to weigh heavily against their right to present their habeas petition.

The Supreme Court held in *Fay v. Noia* that "the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceeding" unless the applicant "has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." 372 U.S. at 438, 83 S.Ct. at 848. Under *Noia,* therefore, as long as Buelows' counsel did not intentionally fail to meet the filing deadline, their procedural default would not foreclose federal habeas consideration of the underlying constitutional claim. However, *Noia*'s expansive rule has been whittled away by later Supreme Court decisions. Under *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), a petitioner who failed to make a contemporaneous objection to the makeup of a grand jury was barred from habeas relief. And later, in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), because objection to the admission of a confession at trial was waived, the Court barred a habeas challenge unless the petitioner could show cause and prejudice. *Sykes* explicitly rejected "the sweeping language of *Fay v. Noia,*" 433 U.S. at 87–88, 97 S.Ct. at 2507, and criticized *Noia* for according too little respect to the state's procedural rules. Chief Justice Burger, in his concurring opinion, pointed out that the crucial distinction between *Sykes* and *Fay v. Noia* is the decision-maker: In *Fay v. Noia,* because

---

ligent. We therefore need not wrestle with the inconsistencies between *Kimmelman* and *Carrier* for this determination.

**9.** We note in particular that the trial judge complied with his duty to conduct a hearing into the financial affairs of the Buelows, and that he made findings as to the defendants' credibility to afford counsel after a full and fair examination. *See United States v. Martin–Trigona,* 684 F.2d 485, 490 (7th Cir.1982); *United States v. Kelly,* 467 F.2d 262, 265–66 (7th Cir.1972), *cert. denied,* 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393, *reh. denied,* 412 U.S. 923, 93 S.Ct. 2738, 37 L.Ed.2d 151 (1973). The record also supports the trial judge's determination that the declarant

of the hearsay testimony, Honey Lou Suttner, was unavailable and that the testimony bears adequate indicia of reliability. Furthermore, the witness offering the hearsay testimony was subject to cross-examination by the defendants. *See United States v. Boulahanis,* 677 F.2d 586, 589 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1972). The careful consideration by the state appellate court and federal district court of the petitioners' constitutional claims and our own thorough review of the record assure us that this case is not the extraordinary one demanding habeas review despite the procedural default.

"important rights hung in the balance of the *defendant's own decision,* the Court required that a waiver impairing such rights be a knowing and intelligent decision by the defendant himself." 433 U.S. at 92, 97 S.Ct. at 2509. However, this waiver standard is not applicable to the decisions made by an attorney on behalf of his client in the trial. 433 U.S. at 94, 97 S.Ct. at 2510. Later cases have followed the *Sykes* cause-and-prejudice standard rather than the *Fay v. Noia* deliberate by-pass test. In *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982), the Court applied *Sykes* to a failure to make a contemporaneous objection at trial. In *Reed v. Ross,* 468 U.S. 1, 16–19, 104 S.Ct. 2901, 2907–08, 82 L.Ed.2d 1 (1984), the Court again used the cause-and-prejudice test on petitioner's failure to raise a jury instruction issue on appeal. And in *Murray v. Carrier,* 106 S.Ct. 2639, it applied *Sykes* to an attorney's inadventent failure to raise a substantive claim of error on appeal.

*Murray v. Carrier* confined the applicability of the deliberate by-pass test even further:

> We express no opinion as to whether counsel's decision not to take an appeal at all might require treatment under such a ["deliberate by-pass"] standard, but, for the reasons already given, we hold that counsel's failure to raise a *particular* claim or claims on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state's courts.

106 S.Ct. at 2648 (citations omitted).

We find the *Fay v. Noia* test to be inappropriate in this case. In the first place, although it has not been explicitly overruled, *Fay v. Noia* seems to be narrowly available only in cases in which a defendant himself decides to waive an appeal. *See, e.g., Presnell v. Kemp,* 835 F.2d 1567, 1577 (11th Cir.1988); *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 361 (7th Cir.1983) (en banc) ("... the rumors of *Fay*'s death are not greatly exaggerated"); *Rinehard v. Brewer,* 561 F.2d 126, 130 n. 6 (8th Cir.1977). Furthermore, unlike *Fay v. Noia,* the case before us does not concern the Buelows' own decision not to file an appeal or any decision in a critical procedure that must be safeguarded. Rather, it concerns an action by petitioners' counsel, an error, a carelessness, that occurred after the first appeal, at the next discretionary level of appeal. We conclude that the *Sykes* cause-and-prejudice standard, mandated by the *Carrier* Court under facts similar to those before us, is the proper test for allowing a habeas petitioner to come into federal court despite a state procedural default.

### Conclusion

The court finds that consideration of the Buelows' constitutional claims was foreclosed by a valid state procedural bar. The petitioners were unable to establish cause for their procedural default through claims of either external impediment or ineffective assistance of counsel. Furthermore, because we did not discover, after a review of the record, that the rejection of petitioners' constitutional challenges would result in a "fundamental miscarriage of justice," we further find that consideration of the underlying claims despite the procedural default is not justified. *See Smith v. Murray,* 106 S.Ct. at 2668. Accordingly, we hold that the Buelows' petition for federal habeas review must be dismissed for failure to establish cause for the default.

The judgment of the district court is reversed, and the case is remanded with instructions to dismiss the petition in accordance with the views of this opinion.

It Is So Ordered.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. Like my brothers, I believe that the procedural default issue here is governed by the "cause and prejudice" test of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See Johnson v. United States,* 838 F.2d 201, 206–07 (Ripple, J., concurring). Counsel's error here was the kind of "simple inexcusable neglect" that the court has held does not constitute "cause." *See Nutall v. Greer,* 764 F.2d 462, 464 (7th Cir.1985). On this basis, I

**430**

join the court in holding that the district court was obliged to dismiss the petition for habeas corpus.