STATE of South Dakota, Plaintiff and Appellee,

v.

**Lloyd DALE, Defendant and Appellant.**

**No. 16060.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 28, 1988.

Decided April 5, 1989.

Lloyd Dale, pro se.

Wade Hubbard, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

KEAN, Circuit Judge.

Lloyd Dale (Lloyd) appeals a judgment of conviction from a jury verdict in Lawrence County[1] which found him guilty of grand theft by deception. We affirm the conviction.

The background information concerning the history of this case is found in the companion appeal, *State v. Byron Dale*, 439 N.W.2d 98 (S.D.1989). We refer to that decision for the purpose of deciding any similar issues presented by this appeal.

The legal authority and analysis of common appeal issues has been fully discussed in *Byron Dale's* decision and there is no reason to reiterate them. As to those issues, the judgment of conviction is affirmed. This writing deals only with an issue peculiar to Lloyd's appeal.

■ After Lloyd was indicted, a warrant was issued for his arrest. Both of these events occurred on January 21, 1987. On February 12, 1987, Lloyd made his initial court appearance and requested court appointed counsel. Mr. James A. Elsing (Elsing) of Lemmon, South Dakota, was appointed to represent Lloyd. From this date until April 30, 1987, various pretrial motions were made and corresponding orders entered. On April 30, 1987, Lloyd notified the court that he had "fired" Elsing the day before.[2] On the same day Elsing requested that he be allowed to withdraw as Lloyd's counsel citing these reasons:

> I believe it unethical and fraudulent or illegal to participate as court appointed counsel for Defendant Lloyd Dale founded upon indigence knowing from personal observation for more than ten years of Defendant Lloyd Dale's beneficial use and enjoyment of a quarter-section of real property with a house and farm buildings, motor vehicles and livestock with the public record showing title to the real property only recently being changed from Defendant Lloyd Dale to his spouse and children but with the beneficial use and enjoyment thereof by Defendant Lloyd Dale continuing; and I believe this perpetration of form over substance to be a fraud upon the legal system and the tax payors [sic] of this state by Lloyd Dale in alleging indigence.[3]

1. The case arose in Corson County, South Dakota. Lloyd was jointly charged with his brother, Byron Dale, Ron Craig, a Baptist minister from North Dakota, and Alfonse Friese, a retired farmer. The matter was moved to Lawrence County upon a motion for change of venue.

2. Elsing's "firing" was founded solely upon Lloyd's belief that Elsing did not have the requisite sincerity or belief in the purpose of his (Lloyd's) cause to oppose the United States monetary system. This problem was certainly compounded by Elsing's personal knowledge of Lloyd's ownership of property which was contrary to Lloyd's affidavit of indigence on February 12, 1987, wherein he stated *under oath* that he had $100.00 in cash and a 1972 pickup truck as his sole assets.

3. Elsing's communication to the trial court concerning his personal knowledge about Lloyd's finances was not only proper, but was required by the Rules of Professional Conduct, SDCL 16–18, Appx, and specifically Rules 1.16(a)(1),

Lloyd asked for new court appointed counsel and a hearing was held June 22, 1987. The court found after the facts were presented that on February 12, 1987, the same day that Elsing was appointed initially, Lloyd had

(a) Transferred a quarter section of land, including thereon his home and outbuildings, to his wife for a sum of $10.00; [4]

(b) Transferred ownership to his ranch brand (LD) to his family, but received no consideration;

(c) On February 13, 1987, Lloyd also transferred the title to two motorcycles, two automobiles and a trailer to his family.

The transfers February 12th were occurring at the exact time the need for counsel was becoming apparent. In Lloyd's own words: "As a matter of fact, I was in the office of the magistrate [sic] making the transfer when the sheriff came in and arrested me." He also testified that he wanted to transfer his property out of his name so no one could put any liens upon his property. Lloyd's request for appointed counsel was denied as the court concluded he was not an indigent who qualified for counsel at state expense. The order was made *nunc pro tunc* revoking the prior order appointing counsel made by another circuit judge. In reaching this conclusion, the court reviewed Lloyd's tax return and also found one of the prime reasons Lloyd did not hire counsel was because he thought they charged too much although he does not recite either who was contacted or the problem with the fee.

As this request and all subsequent requests for counsel were denied, Lloyd proceeded to conduct his defense (and this appeal) *pro se.* He now claims that the denial of his request for legal assistance was a denial of the federal and state constitutions and state law.

We note the legally obvious which is that a criminal defendant is entitled to the assistance of counsel for his defense. U.S. Const., art. VI; S.D. Const. art. VI, § 7. This may be counsel of his own choosing. *State v. Grosh,* 387 N.W.2d 503 (S.D.1986). When a criminal defendant is indigent, he is entitled to counsel at public expenses to prepare for and to present his defense, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *State v. Erickson,* 80 S.D. 639, 129 N.W.2d 712 (1964), SDCL 23A–40, although an indigent defendant may defend *pro se* if his waiver of counsel is done knowingly and voluntarily. *State v. Banks,* 387 N.W.2d 19 (S.D. 1986). *State v. Van Sickle,* 411 N.W.2d 665 (S.D.1987).

The word "indigent" is not defined in the Codified Laws of South Dakota. There exist no decisions in this state discussing the circumstances to examine in determining whether a defendant is indigent. As this concept is central to the one significant issue on this appeal, some clarification on who is an indigent is in order. In this regard there are several rather broad concepts which apply in determining who is an indigent.

■ Initially, it should be understood that to qualify as an indigent a defendant does not have to be destitute or penniless. In *United States v. Cohen,* 419 F.2d 1124 (8th Cir.1969), the court of appeals held that indigency within the meaning of the Criminal Justice Act of 1964 and the Sixth Amendment was not to be equated with destitution, but that the judge making the inquiry need only be satisfied that the representation essential to an adequate defense was beyond the means of the one charged. Likewise in *State v. Harris,* 5 Conn.Cir. 313, 250 A.2d 719 (1968) the Supreme Court of Connecticut held that the concept of indigence was a relative one and that the "impoverished accused" need not be totally devoid of all means or absolutely destitute in order to enjoy the benefit of

---

3.3, and 6.2(a). The communication was also proper under the old Disciplinary Rules, DR 1–102, DR 7–101 and specifically DR 7–102(B).

4. The warranty deed from Lloyd to his wife contained the notation:
   "Exempt from Transfer Fee."

counsel. Similar holdings are found in *McCraw v. State*, 476 P.2d 370 (Okla.Crim. 1970) and *Morgan v. Rhay*, 78 Wash.2d 116, 470 P.2d 180 (1970).

The logic behind this concept is concisely explained in the decision of *Adkins v. E.I. dupont De NeMours & Co.*, 335 U.S. 331, 339–40, 69 S.Ct. 85, 89, 93 L.Ed. 43, 49 (1948), where in a civil case, the Supreme Court held that it was not necessary to post a cost bond if the appealing party filed an affidavit of indigency:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs ... and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make, themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequence is an inadmissible one.

The defendant has the burden to demonstrate his indigence to the court. This is codified in SDCL 23A–40–6 wherein it is written:

> [I]f it is satisfactorily shown that the defendant or detained person does not have sufficient money, credit or property to employ counsel and pay for the necessary expenses of his representation, .... In each case, *the indigent person*, subject to the penalties for perjury, *shall*

*certify in writing* or by other record such factor relating to his ability to pay as the court prescribes. (emphasis added)

■ When a defendant's ability to afford counsel has been placed into issue, the defendant has the burden of proving by a preponderance of evidence his inability to afford counsel, *Buelow v. Dickey*, 622 F.Supp. 761 (E.D.Wis.1985).

■ Indigence should be considered upon a case by case basis. Indigence should be considered without resort to artificially pre-determined financial standards or guidelines, such as, *e.g.*, poverty guideline to determine eligibility for public assistance. *People v. Rocha*, 13 Mich.App. 596, 164 N.W.2d 680 (1968). Indigency should be found when the trial court determines that a defendant lacks the financial resources which would allow him to retain counsel at the particular time when one is needed. *McCraw v. State, supra*. It is not a question of whether the defendant ought to be able to do so, but whether he was unable to employ counsel. *Schmidt v. Uhlenhopp*, 258 Iowa 771, 140 N.W.2d 118 (1966). This, of course, requires that the defendant make a fair and honest effort to hire counsel. It is not appropriate if he rejects hiring counsel because he is unable to find someone who agrees with his concept and points of view upon the facts and law in question. *United States v. Peister*, 631 F.2d 658 (10th Cir.1980).

■ A defendant who requests court appointed counsel should give the court adequate information from which the court can make an appropriate and reasoned decision concerning this defendant's financial status. This is particularly true when the defendant's finances are questioned. *Buelow v. Dickey, supra*. The trial court should then exercise its discretion balancing the assets and income against liabilities and other related factors. *See, People v. Miller*, 113 Ill.App.3d 845, 69 Ill.Dec. 625, 447 N.E.2d 1060 (1983). The information which the defendant must provide to the trial court means information which is more than conclusory in nature. It means information to which the court can apply its

judgment in reaching a decision. *State ex rel Partain v. Oakley*, 159 W.Va. 805, 227 S.E.2d 314 (1976). The type and nature of information which should be furnished is as follows:

(1) Income from whatever source and ability to borrow money;

(2) Bank accounts, savings certificates, bonds, certificates of deposit and so forth;

(3) Interest;

(4) Employment benefits;

(5) Pensions, annuities, social security and unemployment compensation;

(6) Inheritances, pending claims, or lawsuits;

(7) Real and personal property owned regardless of the type of ownership;

(8) Outstanding debts and encumbrances;

(9) Number of dependents;

(10) Fines and restitution;

(11) Seriousness of the charges;

(12) Living expenses;

(13) Inability to hire counsel; and

(14) Present employment.

No one factor is determinative nor is this meant to be an exhaustive list. It is meant to convey the concept that a defendant who requests court appointed counsel has an obligation to fully disclose all relevant information on his status as an indigent. *See, State v. Richter*, 221 Neb. 487, 378 N.W.2d 175 (1985); *Bolds v. Bennett*, 159 N.W.2d 425 (Iowa 1968); *State v. Anaya*, 76 N.M. 572, 417 P.2d 58 (1966); *State ex rel. Partain v. Oakley, supra; State v. Lathe*, 132 Vt. 631, 326 A.2d 147 (1974); and *generally*, Determination of Indigence of Accused Entitling Him to Appointment of Counsel, 51 A.L.R.3d 1108 (1973), § 3.[5]

■ Applying this law and these factors to this case, we find Lloyd's claim of indigence to be inadequate. When his alleged inability to hire counsel was challenged, he responded that (1) he thought they charged too much, not that he was unable to pay the fee, and (2) he could not find an attorney who was willing to accept his viewpoint on the monetary system to his own satisfaction. Neither of these were legally adequate reasons to authorize the trial court to appoint counsel. When Lloyd's recent transfer of assets was challenged by both the state and Lloyd's then court appointed counsel, Lloyd did nothing. He left the challenges unanswered. The court then could and did conclude that Lloyd had an unencumbered assets worth tens of thousands of dollars; that he had adequate funds to support his dependents and pay living expenses; that he had no outstanding debts; and, that his failure to hire counsel was based not upon inability, but philosophical disagreement. Under the circumstances we cannot say that the trial court abused its discretion.

This decision is not intended to minimize the important role the trial court exercises in the determination of indigence. The cases all agree that the court has an obligation to make an extensive inquiry. *See*, 51 A.L.R.3d 1108, § 3. However, when the inquiries are made by the court and the defendant either will not or fails to answer the inquiries, the court is well within its discretion in assuming that the allegations resisting appointment are true and in concluding adequate means are available to hire counsel.

■ Lloyd argues that at the time of his arraignment he had few assets since his property had been transferred to his wife and children. In *United States v. Kahan*, 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974), a criminal defendant was found not to be indigent and had no right to counsel under the Sixth Amendment where he stated he had no funds to hire counsel where in fact he had control of a trust savings account which he had created. The court found that the trust fund was revokable under state law and that the defendant had withdrawn money from the account after his arraignment. In *United States v. Rubinson*, 543 F.2d 951 (2nd Cir.1976), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50

---

5. It is worth noting that the fact an accused succeeded in securing his release on bail is not determinative of non-indigence. The cases are collected at 51 A.L.R.3d 1108, § 5 (1973).

L.Ed.2d 124 (1976), it was held that a defendant, who owned or controlled substantial assets and who put assets in the names of other family members to conceal them from the government and his creditors, was not indigent. Thus, we hold that a criminal defendant may not claim the status of an indigent when he transfers assets to others for wholly inadequate consideration at or near the time when criminal charges are brought when the obvious intent of the transfer is to conceal them from the government and his creditors. To allow such conduct would foster and encourage every defendant regardless of his means and wealth to make a paper transfer of his assets and then request public legal assistance. This is not the intent of the Sixth Amendment, and, we reject Lloyd's attempt to circumvent the purpose of this Amendment. Lloyd was not denied counsel in violation of the federal constitution or the state constitution and statutes.

Because we have concluded that Lloyd was not indigent, there is no purpose in determining whether he made a valid waiver of his right to counsel. Also, we have considered the other issues raised and conclude that, since these issues were not ruled upon by the trial court, there is no record to appeal from. *State v. Jaques,* 428 N.W.2d 260 (S.D.1988); *State v. Olson,* 408 N.W.2d 748 (S.D.1987).

WUEST, C.J., and MORGAN, and HENDERSON and SABERS, JJ., concur.

KEAN, Circuit Judge, sitting for MILLER, J., disqualified.