STATE OF HAWAII, Plaintiff-Appellee, *v.* NOEL MICKLE, Defendant-Appellant

NO. 5609

AUGUST 30, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA AND MENOR, JJ.

OPINION OF THE COURT BY MENOR, J.

On June 6, 1972, defendant Noel Mickle was arraigned in the District Court, First Circuit, Honolulu Division, charged with driving under the influence of intoxicating liquor, in violation of HRS § 291-4. The defendant entered a plea of not guilty and requested a jury trial.

On June 7, 1972, the defendant signed an affidavit and completed a statement of his financial condition, requesting a court-appointed lawyer and claiming that he was without the necessary resources to hire an attorney for his defense. This request was denied by the circuit court.

On September 27, 1972, the defendant proceeded to trial without counsel. He was found guilty of having violated HRS § 291-4 on September 29, 1972. On October 5, 1972, judgment and sentence were entered pursuant to which he was fined $250.00 and his driver's license was suspended for a period of six months. The following day he filed notice of appeal, and on October 10, 1972, moved the circuit court for leave to appeal in forma pauperis. On December 22, 1972, the court denied this motion.

The defendant appealed to this court from the circuit court's order denying leave to appeal in forma pauperis. This court affirmed the trial court's ruling in Memorandum Opinion No. 5367, filed January 8, 1974.

On January 22, 1974, the defendant filed notice of appeal from his conviction and sentence, and it is that appeal which is presently before us.

The solitary issue in the case at bar is, whether the trial judge properly found that the defendant was not *"indigent"* within the meaning of HRS § 705C-1 (Act 44, S.L.H. 1972), and thus was correct in denying his request for counsel. For

 

reasons hereafter discussed, we find that the trial court judge abused his discretion in refusing to appoint counsel for the defendant, and therefore reverse the conviction.

I

The defendant was tried and convicted for an offense punishable by a maximum fine of $1,000 or a maximum term of incarceration of one year, or both. If indigent, he was clearly entitled to the appointment of a lawyer. HRS § 705C-1 provides in pertinent part:

> *Right to representation by public defender.* Subject to court approval any indigent person (1) arrested for, charged with or convicted of an offense or offenses punishable by imprisonment for 30 days or more; . . . shall be entitled to be represented by a public defender.

The trial court's discretion in the appointment of counsel rests with its evaluation as to whether the defendant can be classified as indigent. HRS § 705C-4 is intended to act as a guide in that evaluation:

> *Determination of indigency.* Unless otherwise ordered by the court, the determination of indigency shall be made by a public defender, subject to review by the court. Such determination shall be based upon an appropriate inquiry into the financial circumstances of the person seeking legal representation and an affidavit or a certificate signed by such person demonstrating his financial inability to obtain legal counsel.

In his affidavit and statement in connection with his application for counsel, the defendant listed the following relevant factors:

1. Defendant was an unemployed student attending the University of Hawaii.

2. Defendant was married and had no additional dependants.

3. Defendant's wife was employed and earned $71.00 per week.

4. Defendant received no other financial support from any source.

5. Defendant's only assets consisted of a 1971 Volkswagen sedan, fully paid for [stipulated value, at least $1000.00]; a bank account containing $32.00, and $1.50 in pocket money.

6. Defendant and his wife rented their living quarters, which cost them $160.00 per month.

7. Defendant had an outstanding medical bill of $1150.00.

8. Defendant's bail bond of $150.00 was paid by a friend.

The record indicates that on the basis of this information the defendant had applied to the Office of the Public Defender subsequent to his arraignment in district court, but his request for a lawyer was denied. Defendant then renewed his request at trial. The trial court denied his request, reasoning that so long as he owned an automobile, an asset that could be liquidated to provide the necessary funds to hire an attorney, he was not indigent within the meaning of HRS § 705C-4, and thus not entitled to court-appointed counsel under HRS § 705C-1.[1]

Obviously, no simple formula can be devised that will dispose of every case where court-appointed counsel is sought by the accused.[2] However, in determining eligibility based on indigency, the trial court should take into considera-

---

[1] DEFENDANT MICKLE: Well, your Honor, at this time, again, I would like to renew my request for a court-appointed attorney. I have applied twice to the Adult Probation, and have had it denied. I have applied to the Public Defender's, to Mr. Tsukiyama, and was denied. And again, I say, I would like to have an attorney. I can't afford one.

THE COURT: Very well. So far as the Court's information is concerned, the defendant does have assets so that he is not entitled to court-appointed counsel; and, therefore, his request is again denied at this time.

[Later in the proceedings the court made clear what it meant by "assets."]

THE COURT: Mr. Mickle, is it true that you have a vehicle that you own outright?

DEFENDANT: Yes, sir.

THE COURT: All right. Then you have the assets with which you can [hire an attorney]. . . . Therefore, if you choose to retain your assets in the forms in which they are and not hire a lawyer, that is your prerogative, Mr. Mickle.

[2] For a helpful commentary on the problem see LEGISLATION NOTE, *Eligibility for Appointed Counsel in Criminal Cases: Proposed Standards and Determination Procedures*, 18 DE PAUL L. REV. 243 (1968).

tion the following: *applicant's income* (gross income minus withholding taxes, where applicable) from all sources; *applicant's fixed monthly expenditures,* especially those which are reasonably necessary to provide him and his dependents with the necessities of life; *applicant's assets* and all other available resources, including bank assets, stocks, bonds, life insurance and other investments which are usually the best measure of funds available to pay attorney's fees, inasmuch as they represent excess accumulations beyond what is necessary to meet living expenses; the nature and extent of *applicant's fixed liabilities; applicant's borrowing capacity* and the extent to which such borrowing will affect his fixed monthly obligations and his foreseeable future financial situation; *applicant's good faith efforts to secure his own counsel;* and all other factors and circumstances bearing upon the question of eligibility.

In the final analysis, the inquiry must be whether the defendant is financially able to obtain adequate legal representation. If the defendant is unable to obtain counsel without substantial hardship to himself or his family, then he is entitled to a court-appointed attorney.[3]

The trial courts have generally utilized the foregoing as guides for their determinations of indigency, and these factors have proved to be adequate in the vast majority of the cases. The realm of real and personal property, however, has apparently posed for the trial courts their most persistent problems.

Certainly, the accused's residence should normally be excluded from consideration, especially where it is subject to a mortgage. Otherwise, where real property represents a convertible asset it should be considered in evaluating the

---

[3] This is the test for eligibility adopted by the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Providing Defense Services § 6.1. In commenting on its standard the report states,

The . . . phrase . . ., "without substantial hardship to himself or his family," is included to emphasize that eligibility is not to be determined on the supposition that one is entitled to be provided counsel only after he has exhausted every financial resource that might be required for other vital personal or family necessities, such as food, shelter or medicine.

28

defendant's overall financial picture.

Personal property where the indigent defendant is involved, more often than not, includes family possessions of minimal resale value. Most often these items cannot be viewed as a source of lawyer's fees. Moreover, where the Legislature has specifically exempted certain personal property from attachment, that property should not be considered as an asset available to pay attorney's fees. *See* HRS § 651-66.

The automobile is an item of personal property which is not exempt from attachment, unless it is being used by the defendant as a means to earn a living. HRS § 651-66. In our opinion, however, the defendant's ownership of a 1971 Volkswagen sedan (stipulated value; $1,000.00) should not of itself have precluded the appointment of counsel. In all other respects, based on the foregoing guidelines, the defendant was clearly eligible for court-appointed counsel. He was married and was an unemployed student attending the University of Hawaii. He and his wife subsisted on the wife's earnings of $71.00 a week. They paid a monthly rent for their living quarters of $160.00 per month. They managed to meet their living expenses without financial assistance from the welfare agencies. They had an outstanding medical bill of $1,150.00. In fact, their only significant asset consisted of the Volkswagen automobile in question.

Defendant's counsel on appeal agrees that had this been a luxury automobile, or had the property consisted of a valuable art work, a boat or other such asset, we would now be faced with an entirely different situation. Here, on the other hand, we have an automobile in the "economy" class which we think, in this age of high density living and compressurized civilization, could properly be considered a reasonable necessity. It is not uncommon for families in financially necessitous circumstances to scrimp and save, and make sacrifices, in order to be able to purchase and own an automobile. The automobile affords them an avenue of escape from oftentimes cramped and crowded quarters. With it the unbearable becomes more bearable, breathing space is made readily accessible and some measure of surcease from the vagaries and vicissitudes of life is placed well within reach.

## II

Article I, section 11 of the Hawaii Constitution expressly mandates that "[t]he State shall provide counsel for an indigent defendant charged with an offense punishable by imprisonment for more than sixty days." Moreover, the United States Supreme Court has held that for an indigent defendant[4] to be afforded a fair trial, reason, fairness and justice dictate that he be assisted by appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335 (1963); *See State v. Kane*, 52 Haw. 484, 486, 479 P.2d 207, 208-9 (1971); *Wong v. Among*, 52 Haw. 420, 423-4, 477 P.2d 630, 633 (1970). *Gideon* maintained that the assistance of counsel was a fundamental right, and thus for a state to convict an indigent defendant without first providing him with legal representation, violates his Fourteenth Amendment rights.[5]

Associate Justice William O. Douglas foreshadowed the approach since taken by the Court when he wrote:

"If we assume that petitioner committed a crime, we cannot know the degree of prejudice which the denial of counsel caused. . . . A layman is usually no match for the skilled prosecutor whom he confronts in the court room. He needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment."

*Williams v. Kaiser*, 323 U.S. 471, 475-6 (1945).

Likewise, in the case before us there is no way to determine the "degree of prejudice" resulting from the trial court's denial of defendant's request for counsel.

---

[4] For a thorough treatment of Supreme Court case law regarding the indigent defendant, through *Gideon, see* Tucker, *The Supreme Court and the Indigent Defendant*, 37 S.CAL. L. REV. 151 (1964).

[5] As early as 1956 the Court had clearly revealed its ideological bent in this area;

[O]ur own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system — all people charged with crime must, so far as the law is concerned, "stand on an equality before the bar of justice in every American court." *Griffin* v. *Illinois*, 351 U.S. 12, 17 (1956).

The record reflects that defendant presented no witnesses, conducted no cross-examination, and in general failed to participate in any meaningful way at his trial.

It must have been just this variety of one-sided justice contemplated by Mr. Justice Sutherland in *Powell v. Alabama*, 287 U.S. 45 (1932), when he wrote:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." *Id.* at 68-69.

While the trial judge appeared solicitous as to the fairness of the proceedings, "[he] could not effectively discharge the roles both of judge and defense counsel." *Carnley v. Cochran*, 369 U.S. 506, 510 (1962).[6]

---

[6] The state's contention that defendant's conduct constitutes waiver of counsel is without merit. Waivers are not to be encouraged and are to be accepted only after careful inquiry into their basis. Johnson v. Zerbst, 304 U.S. 458 (1938). At every stage of the proceedings the defendant insisted on his entitlement to court-appointed counsel. There is absolutely no showing that he made knowing, intelligent waiver to the contrary. *See* ABA Standards § 7.2 Waiver:

> The accused's failure to request counsel or his announced intention to plead guilty should not of itself be construed to constitute a waiver. An accused should not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry into the accused's comprehension of that offer and his capacity to make the choice intelligently and understandingly has been made. No waiver should be found to have been made where it appears that the accused is unable to make an intelligent and understanding choice because of his mental condition, age, education, experience, the nature or complexity of the case, or other factors.

Reversed and remanded for a new trial consistent with this opinion.

*David Lo,* Deputy Prosecuting Attorney *(Barry Chung,* Prosecuting Attorney, City & County of Honolulu, of counsel), for plaintiff-appellee.

*Evan R. Shirley* for defendant-appellant.