**Chantel J. KELSEY, Petitioner,**

v.

**The Honorable Timothy R. HANSON, Third District Court, Salt Lake County, Respondent.**

**No. 91091–CA.**

Court of Appeals of Utah.

Sept. 23, 1991.

---

---

Brian M. Barnard (argued), John Pace, Salt Lake City, for petitioner.

Colin Winchester (argued), Associate Gen. Counsel, Office of the Court Administrator, Salt Lake City, for respondent.

Before GARFF, BENCH and RUSSON, JJ. (Law & Motion).

· OPINION

PER CURIAM:

This matter is before us on the petition of Chantel Kelsey for a writ to compel the entry of her divorce decree without payment of the divorce filing fee. In her attempt to obtain a divorce from her husband, petitioner alleged that her sole income of $225 per month AFDC assistance supported herself and her three children and that she did not have funds or assets to pay the divorce filing fee.

■ Petitioner contends that the trial court abused its discretion in refusing to accept petitioner's allegations of impecuniosity solely on the ground that she paid an attorney $100 to prepare the divorce decree papers. The issue presented is whether, as a matter of law, petitioner is able under Utah Code Ann. § 21–7–3 (1984) and § 21–7–4 (Supp.1991)[1] to pay the divorce filing fee simply because she paid an attorney to prepare documents necessary for her divorce.

We hold that the trial court abused its discretion by relying solely upon this fact in rejecting petitioner's alleged impecunious status. Before reaching the conclusion under section 21–7–4 that petitioner is "reasonably able to pay the costs" of the divorce action, the judge should have also considered other factors relevant to petitioner's ability to pay, and not just that she had paid someone to prepare legal documents. Other relevant factors include, for example, petitioner's employment status and earning capacity; financial aid from family or friends; financial assistance from state and federal programs; petitioner's necessary living expenses and liabilities; petitioner's unencumbered assets, or

---

1. Utah Code Ann. § 21–7–4 provides:
    On such oath or affirmation being filed with any justice court judge or clerk of any court, the justice court judge or clerk, as the case may be, shall at once file any complaint or papers on appeal and do any and all things necessary or proper to be done as promptly as if the litigant had fully paid all the regular fees. The constable or sheriff shall at once promptly serve any and all summonses, writs, process and subpoenas, and all papers necessary or proper in the prosecution or defense of such cause, for such poor person as if all

the necessary fees and costs had been fully paid; provided, that in cases where an impecunious affidavit is filed the judge at the time of hearing the cause shall question the person who filed the affidavit as to his ability to pay and in the event that the judge is of the opinion that the person is reasonably able to pay the costs he shall direct that judgment or decree be not entered in favor of that person until the costs are paid. The order may be later cancelled upon petition if the facts warrant such cancellation.

any disposition thereof, and her borrowing capacity; and, the relative amount of court costs to be waived. *See State v. Mickle*, 56 Haw. 23, 525 P.2d 1108, 1111 (1974); Annotation, *Indigency Entitling Accused to Transcript*, 66 A.L.R.3d 954, 962 (1975) and authorities cited therein. An indigent plaintiff need not be completely destitute to be recognized as "indigent" and reasonably unable to bear the costs of the action. *Adkins v. E.I. Du Pont De Nemours & Co.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948). Upon remand, the trial court should redetermine petitioner's ability to pay based upon more than just the sole factor previously applied.

■ As for petitioner's claim for attorney fees under the Civil Rights Act, we decline to make such award. Petitioner claims that the trial court's assessment of her financial status denied her access to the courts and due process of law. Thus, she contends, she is entitled to an award of attorney fees under 42 U.S.C. §§ 1983 and 1988. We disagree.

The trial court merely erred in its factual determination of petitioner's financial condition, a determination the court was required to make in applying Utah Code Ann. § 21–7–4. As noted by petitioner, the trial court is permitted latitude in exercising its discretion. Petitioner was not, and has not been, denied her right to due process or access to the court merely because of an erroneous ruling by the trial court. *Cf. Hirrill v. Merriweather*, 629 F.2d 490, 496 (8th Cir.1980) (mere erroneous application of a state statute to the particular case does not present a question of federal constitutional dignity for purposes of section 1983). Otherwise, every erroneous decision by a state court applying state law might be construed to be a civil right violation. In this case, unlike *Boddie v. Connecticut*, 401 U.S. 371, 374, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971), petitioner has presented to the court her divorce claim and received a hearing and ruling thereon. She has pursued a proper course to secure judicial review of the trial court's error. Furthermore, the judicial relief sought in the trial court has been granted in that the divorce decree has been entered. Petitioner has not been denied her access to the courts. There is no section 1983 violation established, so we do not award attorney fees.

Accordingly, we vacate the trial court's order and remand for a redetermination of petitioner's ability to pay under section 21–7–4 in accordance with this decision. We deny the request for attorney fees.

GARFF and BENCH, JJ., concur.

RUSSON, Judge (dissenting):

I dissent. I would stand by the judgment of the trial court and deny Ms. Kelsey's petition for a writ of mandamus.

When an attorney learns that a new client, who is seeking a divorce, is indigent, that attorney has three responsible courses of action: (1) to represent the client, advance court costs (filing fees), bill the client for such advanced costs as well as attorney fees, and then seek an award, on the client's behalf, of such costs and attorney fees from the adverse party; (2) to represent the client pro bono and seek waiver of court costs; or (3) to refer the client to the Legal Aid Society,[1] where, upon acceptance, legal services will be rendered free of charge and waiver of the filing fee routinely obtained.

Mr. Barnard did none of these things. Instead, he charged Ms. Kelsey, his indigent client, a fee of $100, prepared a divorce complaint in her name pro se, and prepared an affidavit of impecuniosity for her to sign, attesting to her poverty and seeking waiver of the filing fee. He then left Ms. Kelsey to fend for herself at the hearing in district court on the divorce and on the petition to waive the filing fee.

In *Gresham v. Page*, 411 P.2d 251 (Okla. Crim.App.1966), a criminal defendant sought a writ of mandamus to compel the trial court to furnish him with a copy of his case at public expense. He filed an affida-

---

1. Legal Aid Society of Salt Lake provides indigent representation to the Salt Lake County community. Other similar organizations provide legal services to indigents in other cities and counties in the State.

vit in forma pauperis in support thereof. The court denied the writ on several grounds, including insufficiency of proof, wherein the court stated:

> With reference to the third matter of fact, and conclusion of law, provided by the trial court: that petitioner failed to meet the burden of proof that he was an indigent at the time of trial, is consistent with the evidence before the court. This court takes notice of the fact that Tulsa County provides competent legal counsel in the Public Defender's office. At the time of trial, petitioner could have asked for the assistance of that office; but instead, he chose to employ counsel of his own choosing. This action is within his own power of discretion.... but it likewise seems to indicate that at that time petitioner was not a pauper.

*Id.* at 254–55.

Judge Hanson found that since Ms. Kelsey had retained the services of a private attorney and paid him an attorney fee, she was not impecunious for purposes of waiving payment of the filing fee. He stated:

> Well, I guess the thing that concerns me, Ms. Kelsey, is that Mr. Barnard apparently doesn't have any difficulty getting paid for his fees, but then he prepares, after he takes his fees, a document for you to tell me that you don't have any money to pay the filing fees for the court.

Furthermore, he stated:

> Well, I'm going to go ahead and hear this matter, Ms. Kelsey, but in all good conscience to the taxpayers of this community, I cannot approve this Affidavit of Impecuniosity, and the reason I cannot—

I have no problem approving the waiving of filing fees for persons who legitimately do not have the funds to pay. But the thing that concerns me is that you do apparently have the funds to pay an attorney, or at least pay his paralegal, whatever Mr. Barnard is doing over there. But if you're truly impecunious, he ought to be handling this matter without costs.

And:

> While you may be impecunious, if you're not impecunious for paying attorney's fees, you're not going to be impecunious for paying filing fees. It seems to me if the taxpayers are going to bear the burden for all of this, Mr. Barnard ought to be able to do this for nothing, or at the very least, reduce his fees by the filing fees.

Even Ms. Kelsey thought it strange that she had to pay a fee to the attorney, but the filing fee could be waived:

> JUDGE: [B]ut if you're truly impecunious, Mr. [Barnard] ought to be handling this matter without [attorney fees].
>
> KELSEY: That's what I thought. Sometimes you don't get that consideration.[2]

When means have been provided for indigent parties to obtain competent legal assistance without incurring legal fees,[3] and thereby to obtain waiver of filing fees, I find it unconscionable that an attorney, instead of referring the indigent to "free" legal services, would "partially" take the case, charge a legal fee, and then send the client on her way with the complaint[4] and an affidavit of impecuniosity to seek waiver of the filing fee.[5]

---

2. Ms. Kelsey testified that she never actually dealt with Mr. Barnard, but with a member of his staff, Valerie Gylling. The Utah State Bar Directory does not list Valerie Gylling. Utah Code Ann. § 78–51–25 (1987) prohibits any person who is not a member of the bar and licensed to practice law from practicing law or holding himself or herself out as an attorney.

3. These means are provided by Legal Aid Society which, in conjunction with the Salt Lake County Bar pro bono program, provides local attorneys, who donate their time free of charge, to serve indigent clients.

4. The complaint did not even seek an award of attorney fees that would enable Ms. Kelsey to recover from the defendant the $100 that she paid to Mr. Barnard.

5. Moreover, if Ms. Kelsey's immediate protection had been at issue, the proper action would be to advise her to obtain an immediate protective order from the district court, pursuant to the Cohabitant Abuse Act, Utah Code Ann. § 30–6–1 to –11 (Supp.1991), which does not require the assistance of legal counsel nor the payment of fees. Utah Code Ann. § 30–6–4 (Supp.1991).

Judges have a duty to see that laws are administered as intended by the legislature. The Utah Legislature has mandated that a filing fee "shall be paid" for filing civil complaints. Utah Code Ann. § 78-3-16.5 (Supp.1991). However, where an impecunious affidavit is filed, the judge is to question the person about his or her ability to pay and "in the event that the judge is of the opinion that such person is reasonably able to pay costs he shall direct that judgment or decree be not entered in favor of that person until the costs are paid." Utah Code Ann. § 21-7-4 (Supp.1991).

Judge Hanson complied with the above. He questioned Ms. Kelsey and, upon learning that she had retained Mr. Barnard and paid him attorney fees of "approximately" $100, reached "the opinion" that if Ms. Kelsey could afford to pay Mr. Barnard, she could afford to pay the filing fee.

The actions of Judge Hanson were justified. I don't believe the legislature ever intended that filing fees should be waived where a party has retained a private attorney and has paid legal fees to that attorney.

The overwhelming majority of people seeking divorce are struggling financially as they attempt to support two households on the same amount of money with which they previously supported one. Most could file similar affidavits. If only a portion of the 7,000 divorces filed each year in Salt Lake County successfully sought a waiver of filing fees, the cost to the taxpayers could be hundreds of thousands of dollars annually.

Unfortunately, Ms. Kelsey is caught in the middle.[6] Although I am sympathetic to her plight, I cannot condone the practice of court costs "taking a back seat" to attorney fees. Here, the principle involved is crucial. Therefore, this court should stand by the decision of Judge Hanson and deny the petition for a writ of mandamus.

---

6. If, on the other hand, Mr. Barnard were to return the $100 to Ms. Kelsey, there would be nothing to prevent Judge Hanson from waiving the filing fee.