**STATE of Utah, Plaintiff and Appellee,**

v.

**Jeffrey Vere VINCENT, Defendant and Appellant.**

**No. 910619–CA.**

Court of Appeals of Utah.

Dec. 18, 1992.

Vernice S. Ah Ching and Joan C. Watt, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and J. Frederic Voros, Jr., Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Appellant appeals from an order of the Third District Court ruling that appellant is not indigent or impecunious under Utah Code Ann. § 77–32–1 (1992) and Utah Code Ann. § 78–56–8 (1992), and therefore not entitled to court-appointed counsel or to have the county pay for the preparation of transcripts on appeal. We reverse.

## FACTS

The State charged appellant with one count of theft, a second degree felony, in violation of Utah Code Ann. § 76–6–404 (1990). Appellant eventually entered a conditional plea of guilty to theft, a class A misdemeanor, explicitly reserving his right to withdraw that plea should he prevail on appeal. *See State v. Sery,* 758 P.2d 935, 938–39 (Utah App.1988). In August of 1990, appellant was sentenced to one year in the Salt Lake County Jail. A fine of $625, restitution of $1,526, and partial recoupment of fees for court-appointed counsel in the amount of $150 were also imposed. The sentence was stayed, and appellant was placed on probation.

Shortly after his sentencing, appellant filed his Notice of Appeal from the trial court's denial of his motion to quash the magistrate's bindover order. In his motion, appellant claimed the State improperly refiled the information after a dismissal at the preliminary hearing stage of the case.

At the time the Notice of Appeal was filed, appellant executed an Affidavit of Impecuniosity. Thereafter, the trial judge refused to sign an order requiring Salt Lake County to bear the cost of preparing a transcript.[1] Appellant asked this court to determine he was indigent. We remanded the matter to the district court for a determination of impecuniosity.

On September 22, 1991, the district court conducted an evidentiary hearing. At the hearing, appellant testified he had worked continuously for almost eight months at Minit Lube until shortly before the hearing. During his employment at Minit Lube, appellant earned approximately $6.00 per hour and worked between thirty-six and forty hours a week. Appellant netted approximately $105 per two-week pay period after deductions and garnishment for back child support.[2]

Some time prior to the impecuniosity hearing, appellant, who had been divorced for three years, moved into an apartment with his ex-wife and their two children. At the time of the hearing, their combined monthly bills consisted of the following: Rent, $340; car payment, $50 (against a loan balance of $1,100); gas and electric bills, $234; food, $200; and gasoline, $150. They also had been paying $350 to $400 per month for child care during the period when both worked. Appellant is required to pay $75 per month on his fines. He also owes over $6,000 to the Office of Recovery Services for child support which accrued prior to the time the family was reunited.[3]

Less than one week before the impecuniosity hearing, appellant, who at sentencing made much of his history of regular employment, voluntarily terminated his employment with Minit Lube. He made no immediate effort to secure other employment. At the time of the hearing, appellant was caring for his two children, thus obviating the need for paid child care. His ex-wife's income was the sole source of the family's support. Appellant's ex-wife was earning a gross monthly salary of approximately $1,400. Appellant testified, without contravention, that his ex-wife took home about $1,000 each month.

The trial court determined defendant was not indigent or impecunious and again denied appellant's motion for payment of the costs of his appeal. The court entered findings of fact and conclusions of law. Appellant appeals from that order.[4]

Appellant contends the trial court erred in determining he is not indigent, thus violating his constitutional rights to due process and to counsel secured by the Fourteenth Amendment and the Sixth Amendment to the United States Constitution.

## GENERAL PRINCIPLES

Every person charged with an offense which may be punished by imprisonment is entitled to the assistance of counsel. U.S. Const. amend. VI; *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972); *Webster v. Jones*, 587 P.2d 528, 530 (Utah 1978). An indigent person charged with such a criminal offense has a right to appointed counsel at public expense. *Gideon v. Wainwright*, 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1963). Both the Sixth Amendment to the United States Constitution and Article 1, section 12, of the Utah Constitution guaranty an indigent defendant the right to counsel. *Webster*, 587 P.2d at 530 & n. 1. This right attaches in misdemeanor cases where a deprivation of liberty may ensue, as well as in felony

1. Apparently, prior to the first preliminary hearing, a magistrate appointed the Salt Lake Legal Defender Association to represent appellant. The Salt Lake Legal Defender Association represented appellant throughout the proceedings before the magistrate and in district court. However, the magistrate did not conduct an indigency hearing prior to appointing counsel.

2. The back child support, sought by the Office of Recovery Services, accrued during the three years appellant and his ex-wife were divorced and living apart, during which time she apparently received public assistance.

3. *See* note 2. The record indicates that appellant owed $6,279.73 to the Office of Recovery Services as of August 26, 1991.

4. Appellant's appeal of the bindover determination has been stayed pending the outcome of the instant appeal.

cases. *See Gideon,* 372 U.S. at 344, 83 S.Ct. at 796 ("any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him"); *Argersinger,* 407 U.S. at 37, 92 S.Ct. at 2012 ("absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial").

 Relatedly, "[i]n all criminal prosecutions, an accused has a constitutional right to a timely appeal from his conviction," *State v. Johnson,* 635 P.2d 36, 37 (Utah 1981), and, if indigent, has "a constitutional right to the appointment of counsel to assist in that appeal." *Id. See Anders v. California,* 386 U.S. 738, 741, 87 S.Ct. 1396, 1398–99, 18 L.Ed.2d 493 (1967); *Douglas v. California,* 372 U.S. 353, 355–58, 83 S.Ct. 814, 815–17, 9 L.Ed.2d 811 (1963).

The Utah Legislature has enacted comprehensive provisions concerning aid to indigent defendants. Utah Code Ann. § 77–32–2 (Supp.1992)[5] now provides, in pertinent part:

(1) Counsel shall be assigned to represent each indigent person who is under arrest for or charged with a crime in which there is a substantial probability that the penalty to be imposed is confinement in either jail or prison if:

(a) The defendant requests it; or

(b) The court on its own motion or otherwise so orders and the defendant does not affirmatively waive or reject on the record the opportunity to be represented.[6]

Other statutory provisions provide that indigent defendants are entitled to court-appointed counsel on direct appeal and to have the government bear the cost of preparing a transcript. *See* Utah Code Ann. §§ 77–32–1, –5 (1990); Utah Code Ann. § 78–56–8 (1992).

 The defendant has the initial burden of establishing the right to counsel or transcripts at public expense. *People v. Nord,* 790 P.2d 311, 316 (Colo.1990) (transcripts); *Nikander v. District Court,* 711 P.2d 1260, 1262 (Colo.1986) (counsel).

## STANDARD OF REVIEW

Appellant argues in this case that a correction of error standard should be employed. Appellant contends that while the trial court's factual findings underlying the conclusion as to whether an individual is indigent should be given deference, the ultimate conclusion as to indigency is a question of law. There is some support for this view. *See, e.g., Barry v. Brower,* 864 F.2d 294, 299 (3rd Cir.1988) (lower court's finding that defendant's property holdings made him ineligible for the assistance of the public defender was "not entitled to a presumption of validity because indigence itself is not a fact, but a status deduced from historical facts themselves supported by the evidence in the record"); *State v. Dean,* 471 N.W.2d 310, 313–14 (Wis.App. 1991) ("[w]hether [defendant] was denied a constitutional right is a question of constitutional fact that [the court of appeals] review[s] independently").

Three other standards for reviewing indigency determinations appear to have been recognized. The first is that indigency is a factual matter, subject to review under the clearly erroneous standard. *See, e.g., Webster v. Jones,* 587 P.2d 528, 530 (Utah 1978) ("[w]hether [an indigent defendant] is able to employ his own counsel is a question of fact to be determined by the court"). In *Webster,* the Court observed that "[w]hen the court has made [a determination of indigency], it is entitled to the same presumptions of correctness as other findings

---

5. In 1992, the Utah Legislature revised the prior version of this provision, designating what was previously the entirety of section 77–32–2 as subsection (1); made related designation and stylistic changes; and added a new subsection (2) dealing with local government's contracts for the rendition of legal services to indigent defendants. *See* Amendment Notes, Utah Code Ann. § 77–32–2 (Supp.1992).

6. Section 77–32–2 "implements the requirements of the Sixth Amendment to the United States Constitution." *City of St. George v. Smith,* 828 P.2d 504, 505 (Utah App.1992).

and determinations made by the court and the burden is upon the one attacking it to show that it was in error." *Id.* The second additional view is that an indigency determination is evaluated against an abuse of discretion standard. *See, e.g., State v. Fiala,* 107 Or.App. 193, 810 P.2d 1344, 1345 (1991) ("The determination as to whether defendant qualifies for court-appointed counsel is a question for the trial court, and we review only for an abuse of discretion."). This court's decision in *Kelsey v. Hanson,* 818 P.2d 590 (Utah App. 1991), applied an abuse of discretion standard in reviewing an indigency determination in a civil case.

A third position suggests that while the standard is abuse of discretion, that standard should be applied more rigorously than is usually the case in reviewing for abuse of discretion. This view was explained by the Colorado Supreme Court in *Nikander v. District Court,* 711 P.2d 1260 (Colo.1986), as follows:

> The determination of whether a person is indigent and, therefore, entitled to appointment of counsel and a free transcript for purposes of an appeal rests initially in the sound discretion of the trial court and is reviewable only for abuse of discretion. However, such a determination, though entitled to great weight, is subject to careful scrutiny for the reason that it involves a basic constitutional right.

*Id.* at 1262 (citations omitted). *Accord People v. Nord,* 790 P.2d 311, 313 (Colo. 1990); *Redmond v. State,* 518 N.E.2d 1095, 1095 (Ind.1988).

On precedential, policy, and conceptual grounds, we may have differences on the question of which standard should be applied. However, it is unnecessary, as a practical matter, that we grapple with that question because we are of the view that under any of the stated standards, the result is the same.

We likewise agree on the factors which properly should be considered in evaluating indigency, and see this court's recent *Kelsey* case as particularly instructive in this regard. In *Kelsey,* the wife in a divorce action petitioned this court for a writ to compel entry of her divorce decree without payment of the filing fee, alleging she did not have funds or assets to pay the filing fee and therefore was impecunious under Utah Code Ann. §§ 21–7–3 and –4 (1991).[7] The trial court refused to accept petitioner's allegations of impecuniosity, but premised its decision solely on the ground that she paid an attorney $100 to prepare the divorce decree papers. In reviewing the trial court's decision on the issue of indigency, this court articulated a number of factors to be considered by the trial court in determining indigency, a matter which is, by its nature, highly fact-specific. *Kelsey,* 818 P.2d at 591–92. *See State v. Dale,* 439 N.W.2d 112, 115 (S.D.1989) ("Indigence

---

7. Utah Code Ann. § 21–7–3 provides:

> Any person may institute, prosecute, defend and appeal any cause in any court in this state by taking and subscribing, before any officer authorized to administer an oath, the following:
> I, AB, do solemnly swear (or affirm) that owing to my poverty I am unable to bear the expenses of the action or legal proceedings which I am about to commence (or the appeal which I am about to take), and that I verily believe I am justly entitled to the relief sought by such action, legal proceedings or appeal.

Utah Code Ann. § 21–7–4 states:

> On such oath or affirmation being filed with any justice court judge or clerk of any court, the justice court judge or clerk, as the case may be, shall at once file any complaint or papers on appeal and do any and all things necessary or proper to be done as promptly as if the litigant had fully paid all the regular fees. The constable or sheriff shall at once promptly serve any and all summonses, writs, process and subpoenas, and all papers necessary or proper in the prosecution or defense of such cause, for such poor person as if all the necessary fees and costs had been fully paid; provided, that in cases where an impecunious affidavit is filed the judge at the time of hearing the cause shall question the person who filed the affidavit as to his ability to pay and in the event that the judge is of the opinion that the person is reasonably able to pay the costs he shall direct that judgment or decree be not entered in favor of that person until the costs are paid. The order may be later cancelled upon petition if the facts warrant such cancellation.

Both sections govern criminal as well as civil impecuniosity affidavits and hearings. *See State v. Johnson,* 700 P.2d 1125, 1128 (Utah 1985) (criminal defendant may file affidavit of impecuniosity under § 21–7–3).

should be considered upon a case by case basis" and should be considered "without resort to artificially pre-determined financial standards or guidelines."). In each case, the trial court must conduct an in-depth inquiry into each defendant's unique financial situation, "balancing the assets and income against liabilities and other related factors." *Dale,* 439 N.W.2d at 115.

## INDIGENCY GENERALLY

◼ We note initially that "[i]ndigence is not equivalent to total destitution." *Barry v. Brower,* 864 F.2d 294, 299 (3rd Cir.1988). In order to be deemed indigent, "it is sufficient that the defendant lack the necessary funds, on a practical basis, to retain competent counsel." *Nikander v. District Court,* 711 P.2d 1260, 1262 (Colo.1986). *Accord People v. Nord,* 790 P.2d 311, 316 (Colo.1990). "A defendant is considered indigent when he is unable to retain legal counsel without impairing his financial ability to provide economic necessities of life for himself and his family." *Potter v. State,* 547 A.2d 595, 599 (Del.1988). While most courts agree that a defendant need not be penniless to be found impecunious and entitled to appointed counsel, courts have had great difficulty in formulating specific standards defining indigency. As mentioned previously, courts generally determine indigence on a case by case basis, employing a set of broad criteria to determine what constitutes indigency. *See generally* Wade R. Habeeb, Annotation, *Determination of Indigency of Accused Entitling Him to Appointment of Counsel,* 51 A.L.R.3rd 1108 (1973). As one court stated, whether a defendant *"ought to be able*

to employ and pay counsel" is not the primary issue. *Schmidt v. Uhlenhopp,* 258 Iowa 771, 140 N.W.2d 118, 121 (1966) (emphasis in original). Rather, the question is whether an individual has the "present ability to pay counsel to represent him in his appeal." *Nikander,* 711 P.2d at 1262–63.

◼ Generally, in determining whether a particular defendant is indigent, the trial court must consider the defendant's entire financial situation, balancing assets against liabilities, and income against living expenses. *Id.* at 1262. In *Kelsey v. Hanson,* 818 P.2d 590 (Utah App.1991), this court considered several factors in determining whether petitioner was impecunious under Utah Code Ann. § 21-7-3 (1984) and § 21-7-4 (Supp.1991). Those factors include

petitioner's employment status and earning capacity; financial aid from family or friends; financial assistance from state and federal programs; petitioner's necessary living expenses and liabilities; petitioner's unencumbered assets, or any disposition thereof, and [petitioner's] borrowing capacity; and, the relative amount of court costs to be waived.

*Kelsey,* 818 P.2d at 591–92. In addition to these specific factors, the *Kelsey* court stated that while not completely destitute, a person may be indigent if he is "reasonably unable to bear the costs of the action." *Id.* at 592.

The trial court in the instant case based its conclusion primarily on the following findings of fact which, while terse, are adequate in this case since the bulk of the evidence was undisputed: [8]

8. The only evidence before the court was two affidavits of appellant and his testimony at the hearing. There is no significant conflict in the evidence and a lack of findings is inconsequential where the evidence is undisputed. *See, e.g., Flying Diamond Oil v. Newton Sheep Co.,* 776 P.2d 618, 622 (Utah 1989) (While failure to make findings usually necessitates remand, "a remand is not necessary if the evidence in the record is undisputed and the appellate court can fairly and properly resolve the case on the record before it."); *State v. Lovegren,* 798 P.2d 767, 771 n. 10 (Utah App.1990) (trial court's conclusion on legality of stop approved, despite lack of any findings, where facts on that issue were not

disputed and showed clear violation of statute); *Taylor v. Estate of Taylor,* 770 P.2d 163, 168 (Utah App.1989) ("Where the parties have stipulated to the facts or the evidence in the record is otherwise undisputed, the parties have essentially obviated the need for findings or at least rendered harmless the trial court's failure to enter them.") (citations omitted). Against this background, it is clear that the court's findings were not intended to be a complete summary of all the relevant facts—an exercise that would have been unnecessary given the lack of any dispute about what the relevant facts were—but only an indication of the key factors which

1. That the defendant has been employed during the pend[ency] of this matter.

2. That the defendant is now employable but has chosen not to work since it is not in his economic interest to work.

3. That the defendant is presently being supported by his wife who has full time employment.

Thus, the court based its conclusion primarily on two factors: (1) Appellant's employment profile, including his previous employment history, recent voluntary termination of employment, and his apparent ability to be immediately employed should he so choose and (2) the financial support appellant received from his ex-wife. Appellant challenges the trial court's handling of both factors.

## RELEVANCE OF APPELLANT'S EARNING CAPACITY

■ We agree that the trial court appropriately considered appellant's ready employability and reject appellant's argument that his recent decision to quit his job may not be considered in determining indigence.

This conclusion may appear to be at odds with the general rule that inquiry be limited to an individual's *present ability* to hire counsel to represent him on appeal or to pay for his own transcripts. Indeed, courts have generally held that an indigent appellant may not be denied the appointment of counsel if the reason for indigency is voluntary unemployment or underemployment. *See, e.g., People v. Nord,* 790 P.2d 311, 317 (Colo.1990) (fact that defendants voluntarily undertook religious activities, volunteered in various peace projects, and worked only part time jobs, which resulted in limited income, provided no justification for trial court's denial of their request for a free transcript); *Nikander v. District Court,* 711 P.2d 1260, 1263 (Colo.1986) (court to decide whether "petitioner had the present ability to pay counsel to represent him in his appeal and pay for the transcript, not whether he could obtain additional work or secure a higher paying position"); *Morey v. State,* 744 S.W.2d 668, 669 (Tex.App.1988) ("[a]ppellants may not be required to earn or save sufficient funds to prosecute an appeal, and an appellant's future earning power may not be considered"). While we do not quibble with the general rule that courts ordinarily must take an individual as they find him, rather than engaging in elaborate inquiry as to how and why he arrived at his present financial state and what he might do to improve it, an exception to that rule is appropriate in this case.[9]

As the trial court noted, at the time of his sentencing, appellant satisfied the trial court that "he had a stable and regular employment history." Appellant testified at the indigency hearing that until the Wednesday before the hearing he was employed at Minit Lube earning $5 to $6 per hour for approximately forty hours per week. He had been employed there for approximately eight months. At the hearing, appellant did not deny he was capable of full-time employment. Rather, he stated that he had voluntarily terminated his employment at Minit Lube because "it was costing [him] money to work."[10] Despite

prompted the court's decision given the undisputed facts.

The State, without complaint as to the adequacy of the evidence, sets forth in its brief a summary of what the undisputed evidence showed with respect to appellant's historical earnings, family income, and expenses. While the parties disagree sharply about what that evidence tells us concerning appellant's impecuniosity, neither contends the court's findings are inadequate. Nor does the State argue appellant failed in making his case because he did not establish the cost of retaining counsel, the range of fee retainers, and any efforts to secure counsel on his own.

9. This court in *Kelsey* expressly recognized that, in appropriate cases, an individual's "employment status and earning capacity" should be considered in determining indigency. 818 P.2d at 591. *See also Barry v. Brower,* 864 F.2d 294, 300 n. 8 (3rd Cir.1988) (state statute requiring court to consider prospects for continued employment).

10. Appellant testified that when he was employed, he paid $350 to $400 per month to keep his two children in day care. Appellant also testified that he was paid every two weeks at Minit Lube and, because $125 was garnished from each paycheck, the amount he actually brought home was less than the amount he paid

the curious timing of his decision to quit, appellant said he quit his job so he could take care of his children at home while his ex-wife worked. At the hearing, appellant testified he believed he could obtain other employment at the rate of $6 per hour. Thus, assuming he were to work eight hours per day, approximately 21 days per month, appellant is readily capable of earning approximately $950 per month. Under the unique circumstances of this case, notwithstanding our acceptance of the general prohibition against inquiring into the reasons for a condition of unemployment, it is appropriate to attribute to appellant gross monthly income of $950 per month, which is the upshot of the court's finding on employability.[11]

## RELEVANCE OF EX–WIFE'S INCOME

■ The trial court found that "defendant is presently being supported by his [ex-]wife who has full time employment." Appellant contends the trial court should not have considered his ex-wife's income when determining whether he is indigent.

Case law supports the proposition that the financial resources of friends and family should not be considered in determining indigence. See, e.g., Morey v. State, 744 S.W.2d 668, 669 (Tex.App.1988) ("parents are not legally bound to pay for the appeal

expenses of their [adult] children, and they may not be required to do so"); State v. Henry, 733 S.W.2d 127, 128 (Tenn.App. 1987) (whether defendant's parents were financially capable of retaining counsel on his behalf was irrelevant to determination of indigency where defendant was emancipated and parents had no legal duty to support him). However, these cases involve the resources of an adult defendant's parents with no legal duty of support and who are not in fact providing support rather than the resources of someone, like the former spouse in this case, who, despite the lack of any legal duty, in actuality supports the individual claiming indigency in a somewhat atypical family setting.

Appellant asserts that because he is not married to his ex-wife, she has no legal obligation to support him. Therefore, he argues, her assets and income may not be considered in determining whether appellant can afford to hire counsel to represent him on appeal. Appellant's argument fails on two grounds. First, this court in Kelsey expressly permitted consideration of "financial aid from family or friends" in determining indigency. Kelsey, 818 P.2d at 591.[12] Second, while it is technically true that appellant's ex-wife has no legal obligation to support appellant and provide funds to pay for his defense, the reality is otherwise. Appellant's "family" functions

for child care while he was working. Appellant testified that he intended to stay at home for only three weeks, then start looking for a better job. He also stated that he intended to go back to school to earn a high school equivalency certificate.

11. The trial court did not speak specifically in terms of imputing income to appellant. The parties brief the question in terms of income imputation, disagreeing on whether it is appropriate to impute income in determining indigency but not disagreeing on whether that is basically what the trial court did here. Consistent with their view, we take the fair import of the court's finding on unemployability, coupled with appellant's testimony, to be that appellant's indigency status must be analyzed as though he actually were earning what he readily could be earning.

12. In determining indigence, a number of other state and federal courts consider the defendant's income from other sources such as a spouse,

family, and friends. See, e.g., Barry v. Brower, 864 F.2d 294, 300 n. 8 (3rd Cir.1988) (by statute, court may consider, "[w]here appropriate, the willingness and ability of the defendant's immediate family, friends or employer to assist the defendant in meeting defense costs"); United States v. Caudle, 758 F.2d 994, 996 (4th Cir. 1985) (in determining indigency, court considered, in addition to defendant's own income, the availability of income to defendant from his spouse); Hill v. State, 305 Ark. 193, 805 S.W.2d 651, 652–53 (1991) (in determining indigency, court may consider, among other factors, whether appellant "has control or complete discretionary use of funds raised by others for his defense"); Nikander v. District Court, 711 P.2d 1260, 1262 (Colo.1986) (in determining indigency, trial court must consider defendant's "complete financial situation," including "income from all sources"); State v. Dale, 439 N.W.2d 112, 116 (S.D.1989) (among factors to be considered in determining indigency is "[i]ncome from whatever source and ability to borrow money").

as a single economic unit. Indeed, in his Affidavit of Impecuniosity, appellant listed joint *expenses* such as child care, food, rent, utilities and other necessary living expenses. Where appellant cohabits with his ex-wife, operating a common household, and claims the benefit of common expenses, justice requires that the totality of the household's income be likewise considered in evaluating appellant's claimed impecuniosity.

## APPELLANT'S INDIGENCY

Although we accept the state's arguments on the propriety of the trial court's imputing income to defendant and taking into account his ex-wife's income, it does not follow that defendant is not impecunious. As this court articulated in *Kelsey*, an individual need not be completely destitute to be recognized as indigent. Rather, he must show he is "reasonably unable to bear the costs of the action." *Kelsey v. Hanson*, 818 P.2d 590, 592 (Utah App.1991). If an individual's liabilities exceed his assets to a degree that it would be unreasonable to assume he could afford to pay counsel to represent him on appeal and still meet other living expenses, that individual should, for purposes of exercising his right to appeal, be declared indigent and eligible for appointment of counsel. *See Hill v. State*, 305 Ark. 193, 805 S.W.2d 651, 653 (1991). In this case, even imputing to appellant a gross income of $950 per month, and taking into account his ex-wife's gross income of $1,400 per month, appellant has demonstrated that he lacks "the necessary funds, on a practical basis, to retain competent counsel." *Nikander*, 711 P.2d at 1262.

At the time of the indigency hearing, appellant owned only a single asset of any consequence—an ordinary automobile on which he owed $1,100 and made payments of $50 per month. Appellant's liabilities included a debt of over $6,000 for back child support, over $500 in fines, and over

$1,500 in court-ordered restitution. Appellant's personal balance sheet, then, shows a negative net worth. His monthly net income picture is not much brighter. Appellant estimated that working full-time, forty hours per week, he could earn approximately $950 per month. His ex-wife has a gross income of $1,400 per month. According to the state's own calculations, these gross earnings could be expected to yield a net income of $1,850 per month. Appellant's household's aggregate expenses, as claimed by appellant and not challenged by the State, are as follows:

| | |
|---|---|
| Rent | $340 |
| Car payment | 50 |
| Gasoline, etc. | 150 |
| Utilities | 234 |
| Food | 200 |
| Child Care | 350 |
| Fines | 75 |
| Garnishment | 250 |

With a total in listed household expenses of $1,649, the four-person family has approximately $200 per month in what the State would have us regard as discretionary income. Nevertheless, this assumed $200 surplus is essentially illusory. Although appellant's affidavit enumerated only those expenses listed above, we note that the computation of expenses includes no allocation for important necessities such as clothing and medical and dental care. While the family may not incur such expenses on a monthly basis, obviously some part of the supposed $200 excess is allocable to unscheduled necessities such as these. Moreover, at the indigency hearing, appellant acknowledged that he had other unpaid bills, but said he did not list them because he was not actually paying them on a monthly basis.

In view of appellant's substantial indebtedness, this $200 per month "surplus"[13] is not of such magnitude or character as would support the determination that appellant is not indigent. Appellant clearly has no ability, "on a practical basis," to

---

**13.** Insofar as the monthly surplus exists in actuality and not only mathematically, it is at least debatable that it ought first be tapped to more rapidly pay the State the fine it is owed and the unpaid child support arrearage resulting from

the State's apparent provision of public assistance to the former spouse and the children, to say nothing of the restitution owed a crime victim, before it is appropriated to the costs of counsel and transcript preparation.

retain private counsel. *Nikander*, 711 P.2d at 1262. Based on the principles articulated above, while we see no error in the trial court's imputation of income to appellant and its consideration of his ex-wife's earnings, the trial court erred in deciding that appellant is not impecunious.[14] Defendant is entitled to court-appointed counsel and to any transcript necessary for his appeal at county expense.[15]

## CONCLUSION

In examining appellant's complete financial situation, the trial court correctly imputed income to appellant. The trial court also correctly considered appellant's ex-wife's income. However, even considering these factors, it is apparent that appellant is still "reasonably unable to bear the costs of the action." *Kelsey*, 818 P.2d at 592. Thus, the trial court erred in concluding that appellant was not indigent and therefore not entitled to court-appointed counsel to pursue his appeal and to free transcripts. Accordingly, the trial court's order is reversed.

GARFF, J., concurs.

14. Pointing to the fact that he received appointed counsel at the outset, appellant argues that this court should apply a presumption of indigency in determining whether an individual continues to be indigent so as to be entitled to court-appointed counsel on appeal. Appellant relies on *Morey v. State*, 744 S.W.2d 668 (Tex App.1988), in which the court observed that "[w]here an appellant was represented at trial by court-appointed counsel, it is presumed, absent a contrary showing, that the appellant is indigent for purposes of the appeal." *Id.* at 669. While such a presumption makes sense in cases where the trial court has made an initial judicial determination of indigency *prior to* appointing counsel, such a presumption has no application in a case such as this, where no actual determination of indigency was made until appellant sought appointed counsel on appeal.

15. We note that, incident to sentencing, the trial court ordered appellant to pay $150 in recoupment for the cost of court-appointed counsel's services prior to appeal. In this case, the parties are in agreement that partial or total recoupment is available in appropriate cases, and we express no opinion on whether this is such a case. Many courts, when faced with individuals who, while presently unable to afford counsel, may be able to pay for these costs at some point after the trial or the appeal, seek to tap the

JACKSON, Judge (dissenting):

I respectfully dissent from the majority's reversal of the trial court's finding that the defendant was not indigent and could therefore obtain counsel. The trial court did not enter enough relevant findings of fact to logically support its decision. The majority opinion surveys other jurisdictions identifying four potential standards of review, but in light of'd the deficient findings, undertakes a de novo review of the evidence, making and entering its own findings of fact. On the basis of additional findings regarding unscheduled necessities including clothing, medical and dental expenses, and other bills, my colleagues reverse the trial court's decision. This court should not survey other jurisdictions when our own supreme court has already decided an issue. Additionally, the findings in this case are insufficient to support any determination as to indigency. The proper remedy for such an insufficiency is not to review the evidence de novo, but to remand for further findings demonstrating how the trial court reached its conclusion.

A de novo review is improper in light of the controlling Utah case of *Webster v.*

individual's future earnings through the adoption of a recoupment program. *See* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 11.3, at 489 (1985) ("Recoupment programs are directed primarily at defendants who are 'temporarily indigent' (e.g., college students) or who just barely qualify as indigents."). One federal court, when determining whether a defendant with *some* income could be declared indigent, stated that

where a defendant's anticipated income prior to trial is in excess of that necessary to provide him and his dependents with life's necessities but insufficient to pay fully for retained counsel, the defendant should be found eligible for the appointment of counsel, and his available excess funds should be paid to the Clerk of the Court toward reimbursement of the Government for a portion or all of the fees and expenses ultimately paid to assigned counsel.

*United States v. Hennessey*, 575 F.Supp. 119, 121 (N.D.N.Y.1983), *aff'd*, 751 F.2d 372 (2nd Cir. 1984). Similarly, in this case, it may become appropriate to require appellant to reimburse the county for all or some portion of the costs associated with his appeal. Nevertheless, for now appellant is entitled to court-appointed counsel and preparation of necessary transcripts at county expense.

*Jones*, 587 P.2d 528 (Utah 1978). The *Webster* court noted that article I, section 12 of the Utah Constitution assures an accused "the right to representation by an attorney of his choice if he is able to employ counsel, or if he is indigent and unable to obtain counsel, he is entitled to a court-appointed attorney." *Id.* at 530 (footnote omitted). The *Webster* court further stated that whether an accused is able to employ his or her own counsel "is a question of fact to be determined by the [trial] court." *Id.*

The Utah Supreme Court held long ago that "[t]he doctrine of stare decisis and the solemn pronouncements of this court ... should not be treated ... lightly ... by seeking cases from other jurisdictions ... in order to construe a constitutional provision ... already ... construed...." *Springville Banking Co. v. Burton*, 10 Utah 2d 100, 349 P.2d 157, 171 (1960) (Henriod J. specially commenting on Wade J. concurrence). The doctrine of stare decisis is not limited to interpretations of constitutional provisions. Where the supreme court of this state has decided an issue that remains good law, the Utah Court of Appeals should not ignore that precedent and create its own body of law by adopting the precedents of other jurisdictions.

Rule 12 of the Utah Rules of Criminal Procedure requires the trial court to "state its findings on the record" where "factual issues are involved in determining a motion." Utah R.Crim.P. 12(c). The purpose of factual findings is to "ensure that the ultimate [decision] follows logically from, and is supported by, the evidence...." *Smith v. Smith*, 726 P.2d 423, 426 (Utah 1986); *Milne Truck Lines v. Public Serv. Comm'n*, 720 P.2d 1373, 1378 (Utah 1986) (findings should be sufficiently detailed to disclose steps by which factual conclusions are reached).

I do not dispute whether there was sufficient evidence to support the given findings, or whether the trial court arbitrarily ignored substantial uncontroverted evidence to reach a particular finding. I argue that a determination of indigency cannot follow logically from the findings of fact as stated by the trial judge. There simply are not enough relevant findings to come to *any* conclusion as to indigency.

As the main opinion points out, indigency determinations are made by weighing several factors. When an ultimate decision of the trial court is based on the weighing of different factors, "findings of fact are inadequate [if] they ... do not demonstrate a rational factual basis for the ultimate decision by *reference to pertinent factors....*" *Sanderson v. Tryon*, 739 P.2d 623, 627 (Utah 1987) (emphasis added). In the case before us, the trial court concluded the defendant was not indigent based on the following findings of fact:

1. That the defendant has been employed during the pend[ency] of this matter.

2. That the defendant is now employable but has chosen not to work since it is not in his economic interest to work.

3. That the defendant is presently being supported by his wife who has full time employment.

These three findings, although somewhat pertinent, do not form a rational factual basis on which to base an indigency determination. They reference only the defendant's income. The trial court made no findings of fact as to the defendant's assets, liabilities, or other factors relevant to a defendant's ability to obtain adequate legal counsel. The main opinion condenses these three findings into two factors: (1) defendant's employment profile, and (2) the financial support defendant received from his ex-wife, finding them to be an adequate basis for an indigency determination because the bulk of the trial evidence was undisputed.

As footnote eight of the main opinion notes, undisputed facts alone are not enough to make remand unnecessary. The appellate court must be able to "fairly and properly resolve the case on the record before it." *Flying Diamond Oil Corp. v. Newton Sheep Co.*, 776 P.2d 618, 622 (Utah 1989). Proper resolution of an indigency determination is made by consideration of *all* relevant "factors and circumstances bearing upon the question...." *State v. Mickle*, 56 Haw. 23, 525 P.2d 1108, 1111

(1974). This court in *State v. Lopez*, 831 P.2d 1040, 1047–48 (Utah App.1992), *cert. granted*, 843 P.2d 1042 (Utah 1992), remanded the case to the trial court to make relevant findings in part because "[t]he court ... failed to address many relevant *uncontested* facts." (Emphasis added). In *Kelsey v. Hanson*, 818 P.2d 590, 591 (Utah App.1991), the uncontested evidence before the trial court was that petitioner's sole income was $225.00 per month and that she did not have funds or assets to pay the divorce filing fee. The trial judge relied solely on the fact that petitioner paid an attorney $100.00 to prepare the divorce decree papers. *Id.* The court remanded the case for consideration of other relevant factors including: "petitioner's employment status and earning capacity; financial aid from family or friends; financial assistance from state and federal programs; petitioner's necessary living expenses and liabilities; petitioner's unencumbered assets, or any disposition thereof, and her borrowing capacity; and, the relative amount of court costs to be waived." *Id.* at 591–92 (citing *Mickle*, 525 P.2d at 1111). Undisputed evidence is insufficient to make remand unnecessary if that evidence is silent on relevant factors necessary to make a determination.

The main opinion notes that indigence is not equivalent to total destitution, but is a question of an individual's present ability to retain counsel. The ability to retain counsel is not only a function of how much disposable income one has, but also what that disposable income can secure with respect to adequate legal counsel. The record, including the impecuniosity hearing transcripts, contains no evidence, undisputed or not, concerning the cost of retaining counsel or whether the defendant attempted to procure counsel. Without knowing the current rates or the retainer fee the defendant will have to pay up front, a trial judge cannot determine the defendant's present ability to pay for a first interview, let alone the ability to pay for full trial preparation and representation. We do not allow judges to take judicial notice of such evidence when determining attorney fees, in cases where they are at issue, and we should not allow the trial judge to do so here. *See* Utah R.Evid. 201(b). The determination of a person's present ability to retain counsel and consequently a person's indigency status should not be made in the vacuum created by assumption, but by looking at the reality, as demonstrated in the record, of retainer fees and other attorney charges. The trial court's findings of fact are inadequate because they do not demonstrate a rational basis on which to base a conclusion for or against indigency, and the record is silent on whether the defendant can secure legal counsel with any disposable income he may have.

The remedy for inadequate findings is not a de novo review of the record by this court. The absence of adequate findings of fact "precludes appellate review of the evidentiary basis underlying the trial court's decision and requires remand for more detailed findings by the trial court." *Estate of Quinn v. Quinn*, 830 P.2d 282, 286 (Utah App.1992); accord *Woodward v. Fazzio*, 823 P.2d 474, 478–79 (Utah App. 1991); *State v. Lovegren*, 798 P.2d 767, 770–71 (Utah App.1990)).[1] In *Lovegren*, as in this case, the trial court's findings were "inadequate to provide meaningful review on appeal." *Lovegren*, 798 P.2d at 771. The *Lovegren* panel held that even though the trial court's decision on the pre-trial motion before it "may have been correct, the critical 'issues are for the trial court to decide and ... the findings of fact must reveal how the court resolved each material issue.'" *Id.* (quoting *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987)). In the absence of adequate findings, it is simply "not the function of the appellate court to

---

**1.** *See Lopez*, 831 P.2d at 1048 (this court remanded the case to the trial court to make relevant findings of fact necessary to apply a legal standard); *Kelsey*, 818 P.2d 590, 592 (Utah App.1991) (per curiam) (this court remanded the case to the trial court because the trial court did not rely on a sufficient number of relevant factors to make its indigency determination); *Jefferies v. Jefferies*, 752 P.2d 909, 911–12 (Utah App.1988) (this court remanded the case to the trial court because the trial court failed to make findings on all material factors and hence, the findings of fact were insufficient).

try the facts or substitute for the trial court in the determination of factual issues." *Sabol v. Snyder,* 524 F.2d 1009, 1011 (10th Cir.1975); *see also* Utah R.Civ.P. 52(a) (1992).

## CONCLUSION

An indigency determination is to be reviewed using a clearly erroneous standard, giving great deference to the trial court's findings of fact. Findings of fact are inadequate when they do not form a rational basis for the trial judge's conclusions. In the case before us, the trial court has failed to state enough findings of fact on relevant issues to form any conclusion as to the indigency of the defendant. Accordingly, the trial court has failed to properly comply with rule 12 of the Utah Rules of Criminal Procedure.

The main opinion conducts a de novo review of the evidence, making additional findings of fact on which it bases its reversal of the trial judge. The main opinion excuses its departure from the well-established functions of the trial and appellate courts by stating that the evidence before the trial judge is undisputed. Whether the evidence is undisputed is irrelevant if the evidence is silent on factors necessary to make an indigency determination. Instead of establishing a precedent for appellate courts making findings of fact after de novo reviews in cases where the trial court's findings are insufficient, this court should follow the precedent of *Kelsey* and remand this case for a redetermination of defendant's ability to obtain adequate counsel.